In the Matter of Estate of Helen Carlin, Deceased. Thomas D. Nash, Administrator with Will Annexed of Estate of Helen Carlin, Deceased, Appellant, v. Elizabeth A. Curran, Appellee.

**Gen. No. 46,311.**

First District, First Division.

December 13, 1954.

Rehearing denied April 18, 1955.

Released for publication April 18, 1955.

Clark & Fisher, of Chicago, for appellant; William E. Moran, of Chicago, of counsel.

George B. Craven and Eugene P. Meegan, both of Chicago, for appellee.

MR. JUSTICE FRIEND delivered the opinion of the court.

Thomas D. Nash, administrator with the will annexed of the estate of Helen Carlin, deceased, filed a petition for citation in the probate court of Cook county pursuant to sections 183 and 185 of the Probate Act (Ill. Rev. Stats. 1953, ch. 3, secs. 335 and 337 [Jones Ill. Stats. Ann. 110.432, 110.434]) to recover from the respondent, Elizabeth A. Curran, certain monies, United States bonds and a check payable to the order of the deceased. On motion of the petitioner a summary judgment was entered in the probate court directing respondent to turn over the property to the administrator. Respondent carried the case to the superior court which ruled in her favor. The administrator appeals.

The administrator's petition for citation, filed September 2, 1952, alleges in substance that on March

5, 1951 Helen Carlin was eighty-five years old and was a patient in the Walther Memorial Hospital, where she was attended by Elizabeth A. Curran; that on that date Helen Carlin transferred five bank accounts, of the total value of $37,619.38, to Elizabeth A. Curran; that these accounts were transferred only for convenience, and the interest acquired by respondent was as agent for Helen Carlin; that July 23, 1951 Helen Carlin died; that after her death respondent withdrew the balances remaining and invested $25,000 of said funds in United States savings bonds; that on July 23, 1951 two additional bank accounts, of the value of $21,868.15, belonging to Helen Carlin, were transferred to Elizabeth A. Curran; that on July 23, 1951 Elizabeth A. Curran received a check payable to the order of Helen Carlin in the sum of $1,934.28; that the $21,868.15 and the check were received by Elizabeth A. Curran after the death of Helen Carlin; that if the monies and check were obtained before her death, they were received as agent for Helen Carlin; that petitioner made demand upon respondent to surrender the monies and the check, but she refused to do so; and he sought by the petition to have the court find title to the monies and the check to be in petitioner, and he asked for an order on respondent to turn the monies and the check over to petitioner.

After a citation was issued out of the probate court directed to Elizabeth A. Curran, she, on December 20, 1952, filed her sworn answer admitting substantially all the allegations of the petition, but denying that the $21,868.15, transferred on July 23, and the check payable to Helen Carlin, were received after the death of Helen Carlin, or that title to the funds never passed to her, or that the accounts were transferred to her as agent.

Thereafter, on January 23, 1953, the administrator filed a motion for summary judgment, supported by

the affidavit of William E. Moran, his attorney, which recited that he had knowledge of the facts and that if sworn as a witness he could competently testify thereto; that Elizabeth A. Curran is hostile to the administrator, but if called as a witness she would testify that she attended Helen Carlin as a nurse at the Walther Memorial Hospital from the month of August 1950 until March 26, 1951; that she did banking on behalf of Helen Carlin; that she entered into a written agreement with her on March 5, 1951, of which Exhibit A, attached to the administrator's motion, is a copy; that the bank deposits in the sum of $37,619.38 were transferred to her pursuant to the provisions of the agreement marked Exhibit A; that on Helen Carlin's discharge from the hospital she went to live with Elizabeth A. Curran at an apartment occupied by her and other members of the Curran family, located at 2710 North Hampden Court; that on April 20, 1951 she entered into another agreement with Helen Carlin with regard to the funds transferred on March 5, 1951, of which Exhibit B, attached to the administrator's affidavit, is a true copy; that on July 20, 1951 respondent entered into still another agreement with Helen Carlin, of which Exhibit C, attached to the affidavit, is a true copy; that the accounts transferred to respondent on July 23, 1951 were transferred pursuant to the provisions of the agreement marked Exhibit C; that July 23 she received a check from Greenebaum Sons Investment Company for the sum of $1,934.28, payable to Helen Carlin, which she never delivered to Helen Carlin, and which was never endorsed and redelivered by Helen Carlin to Elizabeth A. Curran; that after March 5, 1951 respondent paid Helen Carlin's hospital, doctor bills and other expenses of her illness and re-imbursed herself for necessary charges and for charges of furnishing Helen Carlin with a home from the accounts transferred to her by Helen Carlin on March 5, 1951.

The order from which this appeal is taken, in addition to allowing respondent's motion for summary judgment, denying petitioner's motion for summary judgment and dismissing the petition for citation, directed the administrator to endorse the check issued by Greenebaum Sons Investment Company in the sum of $1,934.28 and deliver it to Elizabeth A. Curran forthwith, and also directed that Kucharski, clerk of the superior court, turn over to Elizabeth Curran all monies on deposit with him as clerk pursuant to an order entered in cause No. 51–S–16654. The Greenebaum check for $1,934.28, which petitioner sought to recover from respondent, was dated July 23, 1951 and represented the proceeds from the sale of two stock certificates which had been endorsed and delivered to Elizabeth Curran by Helen Carlin. In her affidavit opposing the petitioner's motion for summary judgment, Elizabeth Curran alleged that when these certificates were endorsed and delivered to her, Helen Carlin said: " 'I want you to have these as your own and I want you to take them down to the broker at Greenebaum Sons Investment Company and sell them immediately and keep the cash.' " The date on which these certificates were alleged to have been endorsed and delivered to Elizabeth Curran was July 23, 1951; Helen Carlin died shortly after noon on that same day. As we view these circumstances, petitioner should recover from respondent the check in question which was never cashed. Since respondent had filed no pleading in either the probate or the superior court in which any affirmative relief was requested other than that the petition be dismissed, we perceive no justification for the provisions of the order directing the administrator to endorse the check and deliver it to Elizabeth Curran. The issue raised by the citation to recover property was as to the title of the check, and the relief requested in the petition was that the respondent turn over check to

246

petitioner. In her answer respondent admitted that the check was in her possession, but she claimed title thereto. The probate court in its order decided the title to the check was in petitioner and ordered respondent to turn it over to him. It was proper for the probate court on the issues presented by the petition for citation and the answer filed thereto to decide who was entitled to the check and to direct that the respondent turn it over to petitioner because that was the relief prayed for in the petition. If the probate court had decided that the respondent was entitled to the check it had no right to grant any relief except as prayed in defendant's answer which was to dismiss the petition. The rule is well settled that on a trial de novo the circuit or superior court stands in the place of the probate court, and the trial must be limited to the issues raised in the court in which the trial was begun; such a trial cannot extend to issues not before passed upon by the court in which the original trial was had. In re Estate of Salt, 346 Ill. App. 546. Moreover, it appears that respondent and the chancellor misconstrued the purpose for which these proceedings were instituted; the question was not whether decedent made a valid gift of the bonds inter vivos, as respondent and the chancellor chose to treat it, but whether the deceased by endorsement and delivery of the certificates made a valid gift of the check itself. It has been held that a negotiable instrument may be the subject of a gift inter vivos without an endorsement thereon, but the cases uniformly hold that there must be a delivery to the donee by the payee with intent to transfer title. Rothwell v. Taylor, 303 Ill. 226; In re Estate of Wright, 304 Ill. App. 87. Helen Carlin died the same day the check was issued but before Elizabeth Curran could obtain from her her endorsement or delivery of the check; and so even though the above quoted statement attributed to the deceased shows an intent to make a gift of the proceeds

of the sale of the bonds, nevertheless the gift was not completed during the lifetime of the deceased by delivery of the check, and therefore the gift failed. If, as respondent contends, the check represented the proceeds from the sale of the bonds which were a valid gift to respondent, her remedy was not to withhold possession of the check from the administrator but, rather, to surrender it to him and then file a petition setting up the facts of the purported gift. These conclusions are further supported by the provisions of section 50, chapter 98, Illinois Revised Statutes 1953 [Jones Ill. Stats. Ann. 89.050] which read: "An instrument is negotiated when it is transferred from one person to another in such manner as to constitute the transferee the holder thereof; . . . if payable to order, it is negotiated by the indorsement of the holder, completed by delivery."

The order of the trial court in directing that Edmund A. Kucharski, clerk of the superior court, turn over monies on deposit with him as clerk in the superior court case No. 51–S–16654 was likewise erroneous. That sum was deposited in another suit, the details of which are nowhere explained, but it is clear that at the time the probate court entered the order with regard to this fund, and indeed before the citations hearings were instituted in the probate court, the superior court, in the case referred to above, had already taken jurisdiction of this fund and directed that it be deposited with the clerk of the superior court, thereby placing the fund beyond the reach of either of the parties to the citation proceedings. Kucharski was not a party to the proceedings in the probate court, nor was he made a party by amendment of any kind in the superior court. The $21,868.15 deposited with Kucharski represented funds which Elizabeth Curran had withdrawn from Helen Carlin's accounts in the Harris Trust and Savings Bank and the Northern Trust Com-

248

pany on the day of Helen Carlin's death, July 23, 1951. It thus seems clear to us that the probate court not only had no jurisdiction of the person of Kucharski, clerk of the superior court, but also had no jurisdiction of the monies in his possession; and the superior court on appeal from the probate court likewise lacked jurisdiction of both the person and the subject matter. It would follow that if the probate court had no power to enter an order on Kucharski because the issue was not presented in the petition on the respondent's answer, the superior court on appeal from the probate court had no such power. It is a fundamental principle applicable to all proceedings that a person must have an opportunity to be heard before a court can render judgment against him, and that a judgment or a decree entered by a court in the absence of jurisdiction of the person to be affected thereby or of the subject matter of the litigation is a nullity. Moser v. Feciura, 324 Ill. App. 552; In re Estate of Shanks, 282 Ill. App. 1. Neither the probate nor the superior court had jurisdiction of the subject matter of the deposit made before these proceedings were instituted.

There remains the question whether the administrator, as petitioner, had the right to recover from respondent the balances remaining from five bank accounts of the value of $37,619.38 transferred to respondent on March 5, 1951, and the $25,000 in United States bonds to which the balances were admittedly converted by respondent, after allowances, of course, for Helen Carlin's medical and other expenses under contracts entered into between Helen Carlin and Elizabeth Curran on March 5, April 20 and July 20, 1951. These agreements are attached to the pleadings of both parties, and are discussed and relied upon by both sides. All three instruments set out that Elizabeth Curran, at the request of Helen Carlin, continued to render nursing, personal and financial services to Helen

249

■

Carlin; that Helen Carlin agreed to pay Elizabeth Curran for her graduate nursing services at the established rates; that designated bank accounts in the name of Helen Carlin should be transferred to the name of Elizabeth Curran to facilitate making withdrawals for Helen Carlin's nursing, maintenance and funeral expenses.

■ It is obvious that Helen Carlin had two purposes in mind at the time she executed these documents; she wished, first, to provide for her maintenance and the payment of her medical and other expenses so long as she lived, and for this purpose she desired to retain control of her assets; secondly, she desired to dispose of her assets after her death, and, instead of making a new will (she had made a will in August 1950 bequeathing her entire estate to two cousins in the East, share and share alike), she caused the documents here under consideration to be drafted by her attorney; in order to dispose of her assets after death she provided that her bank accounts be turned over to Elizabeth Curran, and, in the agreement of March 5, 1951, that on her death Elizabeth Curran should have an amount equal to one-third of the balances remaining, leaving the remaining two-thirds, in equal amounts, to her cousins. The subsequent agreements were substantially the same except for one significant change; they made no provision for Helen Carlin's cousins but, instead, named Elizabeth Curran as the sole beneficiary of whatever remained of the assets of Helen Carlin referred to in the agreements. To preserve her assets during her lifetime and to provide for the payment of her expenses she stipulated that Elizabeth Curran should have the right only to make withdrawals on the funds to pay her expenses and reimburse herself for nursing charges. This pattern is apparent in all the documents or so-called contracts wherein the same restrictions were imposed upon Elizabeth Curran as to

250

withdrawal of the funds. It is important to note that all three of the documents contained a clause whereby either party could cancel the documents at will, and in that event Elizabeth Curran was to surrender the balances in the accounts to Helen Carlin. Since these agreements were terminable by either party at will no rights attached to any part of the funds, the purpose of the documents being to retain control in decedent. As a result of Helen Carlin's attempt to retain her assets for her maintenance and support during her lifetime and dispose of them after her death, she had, whether or not she was aware of it, performed a testamentary act. As was said in Austin v. First Trust & Savings Bank, 343 Ill. 406: "The animus testandi does not depend upon the maker's realization that the instrument he is executing is a will but upon his intention to create a revocable disposition of his property to take effect after his death." The law is well settled that "if the intended disposition of property is of a testamentary character and not to take effect in the testator's lifetime but is ambulatory until his death, such disposition is not operative unless it be declared in writing, in strict conformity with the statutory enactments regulating the making of wills." Oswald v. Caldwell, 225 Ill. 224. To the same effect see Noble v. Tipton, 219 Ill. 182. The difficulty in these proceedings seems to arise from the fact that Elizabeth Curran regarded these transfers as in the nature of a gift, and the chancellor so treated them; but since the attempted gift was not to take effect until Helen Carlin's death it failed of its purpose. To make a valid gift, either inter vivos or causa mortis, it must be completed and executed in the lifetime of the donor, beyond his power of recall by transfer of legal title to the trustee or donee. Williams v. Anderson, 288 Ill. App. 149; Hopkins v. Hughes, 340 Ill. 604; and Suchy v. Hajicek, 364 Ill. 502. We think that the true import of the transfers of these bank

251

accounts was to vest custody in Elizabeth Curran as agent for Helen Carlin for purposes of convenience during the lifetime of Helen Carlin, and since the transfers were ineffective to vest ownership in Elizabeth Curran after Helen Carlin's death, the accounts became the property of her administrator or legal representative of her estate; and of course when $25,000 of these funds were withdrawn and invested in United States government bonds, these bonds likewise became an asset of the deceased's estate.

As indicated, we are of opinion that the order of the trial court allowing respondent's motion for summary judgment was entered in error. Petitioner states in the concluding paragraphs of his brief that he takes no issue with the action of the chancellor in denying petitioner's motion for summary judgment but contends that respondent's like motion should also have been denied. We concur in these contentions. Accordingly the order of the superior court is reversed in toto, and the cause remanded with directions that the petition for citation and the answer thereto be heard on their merits.

Order reversed in toto, and the cause remanded with directions.

BURKE, P. J. and NIEMEYER, J., concur.