DONALD C. STRAND, Exr. of the Estate of John C. Hoagland, Deceased, Plaintiff-Appellee, *v.* THE UNITED (METHODIST) CHURCH OF SHELDON *et al.*, Defendants-Appellants—(SUMNER NATIONAL BANK OF SHELDON *et al.*, Defendants-Appellees.)

(No. 72-259;

\* Third District—June 29, 1973.

* Late petition for rehearing pending at time of publication. For possible modifications on rehearing, see Table of Cases, Volume 13 Ill.App.3d.

Brock, Marwalder, Sutherland, Razzano & Murphy, of Watseka, for appellants.

Robert L. Dannehl, of Watseka, and John D. Whitenack, Assistant Attorney General, of Chicago, for appellees.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

This is an appeal from a judgment in favor of plaintiff Donald C. Strand as Executor of the Last Will and Testament of John C. Hoagland, deceased, in a declaratory judgment action. Plaintiff brought the action in the Circuit Court of Iroquois County seeking declaratory judgment that funds in a special deposit which the decedent John C. Hoagland had made in the Sumner National Bank should revert to the decedent's estate. The principal defendants named in the action were The United (Methodist) Church of Sheldon, its Board of Trustees, and the Attorney General of Illinois in his capacity of supervisor of charitable gifts and trusts.

The facts as set forth in the pleading and a stipulation are relatively undisputed. On February 18, 1963, John C. Hoagland executed a document which was in the following form:

"DIRECTIONS REGARDING SPECIAL DEPOSIT IN THE NAME OF BOARD OF TRUSTEES OF UNITED PRESBYTERIAN CHURCH OF SHELDON, IROQUOIS COUNTY, ILLINOIS—FOR BUILDING PURPOSES

The undersigned, John C. Hoagland, hereby establishes a special deposit in the name of the board of trustees of the United Presbyterian Church of Sheldon, Iroquois County, Illinois, which funds may be withdrawn upon the signature of the President of the Board of Trustees and the Treausrer [sic] of the United Presbyterian Church upon the following conditions:

1. This deposit is made as a memorial in memory of Martha A. Hoagland, my mother, and Rebecca McCloud, my wife Harriet's mother, by John C. and Harriett M. Hoagland.

2. This special account may be withdrawn by the designated officers of the Board of Trustees of the United Presbyterian Church, solely for building purposes as provided herein.

3. This deposit is made and established in the sum of Twenty Thousand ($20,000.00) Dollars solely for the purpose of building an educational and Sunday School addition to the church building in Sheldon, Illinois, which additions shall be as provided herein and shall be dedicated in memory of said Martha A. Hoagland and Rebecca McCloud.

4. The said funds shall be made available [sic] contract is let and construction has been commenced for the purpose of the addition herein specified.

Dated this 18th day of February, 1963.

/S/ John C. Hoagland (SEAL)

Said deposit is hereby accepted by the Board of Trustees of the United Presbyterian Church of Sheldon upon the terms and conditions herein defined and outlined.

> Board of Trustees of United Presbyterian
> Church of Sheldon, Illinois
> By /S/ Carl John Julien
> President of Board of Trustees
> /S/ Thomas M. Rice
> Treasurer"

On February 26, 1963, eight days following the execution of the document, Hoagland established a special account in the Sumner National Bank by depositing $20,000 in the name of "Board of Trustees of the United Presbyterian Church of Sheldon." It is not shown in the record whether the bank was given a copy of the document or was aware of it. After the special deposit had been made, on December 18, 1965, Hoagland was adjudicated an incompetent and a Conservator was appointed for him. Thereafter, on or about June 30, 1967, the United Presbyterian Church of Sheldon, pursuant to a vote of its congregation, merged with the Sheldon Methodist Church and the merged church was known as The United (Methodist) Church of Sheldon, and occupied and utilized the church building of the former Sheldon Methodist Church. At the time of the merger, the building formerly used by United Presbyterian Church was abandoned for church purposes.

Decedent Hoagland died on October 19, 1969, six years and eight months following the making of the special deposit. At the time of his death the accumulated interest had increased the account to a sum in excess of $24,300. Prior to the date of Hoagland's death, neither the United Presbyterian Church nor the merged The United (Methodist) Church of Sheldon, made any effort to use the deposit for the purposes set forth in the document dated February 18, 1963, nor did The United (Methodist) Church of Sheldon exert any claim to the deposit. After the death of Hoagland, both the executor of Hoagland's estate and the merged church laid claim to the bank account. The litigation now before us ensued.

On appeal in this court, defendants make two alternative contentions. Appellants contend that Hoagland made an absolute and unconditional gift to United Presbyterian Church, thus causing the deposit to become the property of the merged church. They also contend, alternatively, that the document of February 18, 1963, which we herein refer to as the "Directions", created a charitable trust which may be given effect as to the merged church under the doctrine of *cy pres.* We do not believe either contention may be sustained.

██ A gift is a voluntary, gratuitous transfer of property by one to another. It is axiomatic, in the law, that the burden of proof rests upon the donee to prove all facts essential to establishing a valid gift. To constitute a legally effective gift *inter vivos,* there must be an intent manifested by the donor to make such a gift. There must also be an absolute and irrevocable delivery of the property to the purported donee, or to such donee's agent, with the intention of vesting the title and the immediate right of possession, absolutely and irrevocably, in the purported donee, without restrictions. The donor must relinquish all present and future power and dominance over the subject matter of the gift. There must also be evidence of acceptance by the donee. If, however, the delivery is absolute and unconditional, so that the claimed gift takes effect at once, the acceptance of the donee may be implied. (*Dudley v. Uptown National Bank of Moline,* 25 Ill.App.2d 514; *In re Estate of Meyer,* 317 Ill.App. 96; *Gordon v. Gordon,* 113 Ill.App.2d 191.) As stated in *Pocius v. Fleck,* 13 Ill.2d 420, at 428:

"The gift must be executed and completed in the lifetime of the donor, and if not so completed in his lifetime, his death revokes that part of the gift which has been performed. *In re Estate of Carlin,* 5 Ill.App.2d 241; *In re Estate of Waggoner,* 5 Ill.App.2d 130."

██ While it is apparent that the money was deposited with the bank as an agent for the donor, rather than as agent for the donee (see: *In re Estate of Meyers,* 317 Ill.App. 96, 102; and *People ex rel. Auditor of Public Accounts v. West Side Trust & Savings Bank of Chicago,* 376 Ill. 339, 342-343), we need only look to Paragraph 4 of Hoagland's "Directions" to conclude that an absolute gift *inter vivos* was neither intended nor accomplished when the special deposit was placed in the bank. That this was recognized by the trustees of the United Presbyterian Church when they signed the acceptance, is manifest from the fact that the acceptance was made subordinate to the "terms and conditions" outlined in the "Directions". Under the terms of paragraph 4 it was provided that the funds in the special deposit "shall be made available" to the church when the contract is let and the construction has commenced on the church addition referred to in the preceding paragraph. With the language so clearly demonstrating the intention of the donor it cannot be said that there was a present vesting of title to the funds in the church or that it was given "* * * the immediate right of possession absolutely and irrevocably * * * without restrictions." (*Dudley v. Uptown National Bank of Moline,* 25 Ill.App.2d 514, 521.) Neither the United Presbyterian Church nor the merged church took, or attempted to take, the steps necessary for the claimed gift to take effect

as an executed and completed transfer during the lifetime of the donor. On the basis of precedents referred to above, the consequence was that, at Hoagland's death, the gift was revoked to the extent that it had not been performed and, on this ground, the trial court properly ordered the bank to deliver the special account and the interest accrued thereon to the plaintiff-executor.

■■■ We note that it is generally held that a delivery of a savings account book, with the intent to make a gift of the account, is effective to pass title to the funds (*e.g. In re Estate of Whaley*, 3 Ill.App.2d 333, 335), and it is contended by the Attorney General in this case that there was a completed gift here inasmuch as "the church has affirmed that it had continuous possession of the subject passbook." We note that this representation is completely dehors the record. Matters or facts which are alluded to, or statements which are made in a brief in this court, which are entirely outside the record, cannot be considered by this reviewing court in disposition of the cause before us, unless there is a stipulation or an agreement between the parties that such facts may be considered in the cause. (*Berdelle v. Carpentier*, 11 Ill.2d 295; *County Board of School Trustees v. Bendt*, 30 Ill.App.2d 329.) As a matter of fact, even if the delivery of the account book did in fact take place, it was taken subject to the "Directions" and the provisions of paragraph 4 which we have noted.

■■■ We recognize, also, that since a special deposit is said to include one "* * * where the bank becomes a trustee for the depositor by special agreement or other circumstances sufficient to create a trust" (*People ex rel. Auditor of Public Accounts v. West Side Trust & Savings Bank of Chicago*, 376 Ill. 339, 342), the contentions of defendants that the "Directions" created a charitable trust is not wholly without substance. Under the facts, however, we see no purpose in further exploring such contention. When the United Presbyterian Church ceased to exist, and the building for which Hoagland intended to provide an addition was abandoned, it became impossible to carry out the purpose set forth in his "Directions". Defendants recognize that this is so, but nevertheless assert that the trust may be given effect for the benefit of the merged church under the doctrine of *cy pres*. We do not believe that this contention is tenable under the facts in this case.

As noted in I.L.P. *Charities*, § 45, p. 68:

> "The *cy pres* doctrine is applicable only where the donor had a general intention to devote the property to charitable purposes, and it does not apply where the gift is to a specific object or organization with no indication of a general intent to devote the property to some charitable cause, plan, or scheme."

(See also: *Bogert Trust and Trustees* 2d, § 46, p. 422; *Quimby v. Quimby,* 175 Ill.App. 367; *Chicago Daily News Fresh Air Fund v. Kerner,* 305 Ill.App. 237). Thus we find that in order to justify the application of the *cy pres* doctrine there must be two prerequisites: first, a failure of the specific gift; and, second, a general charitable intent disclosed in the instrument creating the trust. In this case, there is no question but that the specific gift has failed, inasmuch as the United Presbyterian Church has ceased to exist and its church building was abandoned. We believe it is equally clear from a reading of the "Directions" that Hoagland made no manifestation of a general charitable intent. Rather, it is apparent that the instrument manifests an intent to benefit only the United Presbyterian Church for a specific purpose described by Hoagland as being "solely for building purposes as provided herein." There is no expression of a general charitable intent. The trust, therefore, cannot be saved for the benefit of the merged church under the doctrine of *cy pres.*

For the reasons stated in this opinion, the judgment of the Circuit Court of Iroquois County is affirmed.

Affirmed.

SCOTT and DIXON, JJ., concur.