**Daniel F. McCARTHY, and First National Bank & Trust Company of Evanston, Trustees of the Melanie B. McCarthy Trust, Plaintiffs-Appellees,**

v.

**UNITED STATES of America, Defendant-Appellant.**

No. 86–1173.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 16, 1986.

Decided Nov. 24, 1986.

As Corrected Feb. 11, 1987.

Allen H. Meyer, Chicago, Ill., for plaintiffs-appellees.

John Murray, U.S. Dept. of Justice, Tax Div., Washington, D.C., for defendant-appellant.

Before BAUER, Chief Judge, and FLAUM and EASTERBROOK, Circuit Judges.

BAUER, Chief Judge.

This is an appeal from an order of the district court granting the plaintiff taxpayer's motion for summary judgment and compelling the Government to issue an estate tax refund. We reverse the order of the district court and remand this case for further consideration in light of our holding herein.

I.

This case arises from the imposition of an estate tax deficiency by the Internal Revenue Service against the estate of Melanie B. McCarthy ("decedent"). The plaintiff-appellees, Daniel F. McCarthy ("McCar-

thy") and First National Bank & Trust Company of Evanston serve as trustees of the McCarthy estate.

The decedent died on May 24, 1980. Prior to her death she maintained a joint checking account with her son, McCarthy, at First National Bank and Trust of Evanston. McCarthy had authority to write checks on the account and did so on many occasions to pay the decedent's bills and to make gifts upon her request. During the period from May 15, 1980 to May 22, 1980 McCarthy wrote nine $3,000 checks which the decedent intended as gifts to various relatives. While all of the checks were delivered or mailed to the intended donee prior to the decedent's death, none were cashed before that time.

The plaintiffs did not include as assets of the estate, the nine $3,000 checks totaling $27,000 remaining in the decedent's checking account at the time of her death. The Internal Revenue Service assessed the estate for additional taxes totaling $8,349 plus interest relating to the inclusion of the $27,000. The district court held that the uncashed checks were completed gifts for purposes of federal estate tax law and therefore, not includible in the decedent's estate. Additionally, the court held that even if the gifts were not complete until paid by the banks, upon such payment, the date of the completed gift related back to the date of original delivery. For the reasons set forth below, we reverse the order of the district court.

## II.

The particular issue presented for review here arises upon the timing of the decedent's death between the writing of the disputed checks and the debiting of decedent's account. Section 2031(a) of the Internal Revenue Code defines gross estate as including "... the value at the time of his [decedent's] death of all property, real or personal, tangible or intangible, wherever situated." I.R.C. § 2031(a) (1985). Sec-

tion 2035(a) provides that gifts made by a decedent within three years of death are to be included in the gross estate. *Id.* § 2035(a). However, an exception to this general rule appears in section 2035(b)(2) which excludes any gift made by a decedent up to $3,000 per donee, per calendar year. I.R.C. § 2035(b)(2) (1980).[1] Whether the decedent in fact "made" or completed a gift of the nine checks prior to her death is the question now before us.

The district court concluded that within the meaning of federal tax law the decedent relinquished dominion and control of the checks sufficient to establish a completed gift. In so holding, the court indicated that while it found Illinois state law "influential," federal law determined whether a gift was complete for federal estate tax purposes. We conclude that the district court erred in disregarding the relevant Illinois law.

This case involves the link between gift and estate taxation, the provisions of which must be read together. *Estate of Sanford v. Commissioner*, 308 U.S. 39, 44, 60 S.Ct. 51, 56, 84 L.Ed. 20 (1939). The estate tax is levied on all the decedent's "property, real or personal, tangible or intangible." 26 U.S.C. § 2031(a). The definition of "property" is a problem of state law, because that is the source of rules identifying and limiting personal interests in assets. *Howard v. United States*, 125 F.2d 986, 989 (5th Cir.1942). But whether Mrs. McCarthy had a "property" interest in the money represented by the checks depends on whether her gifts were completed by the time of her death. That depends initially on whether the gifts would be sufficient to trigger a gift tax (in the absence of the $3,000 exclusion), for under the Code if the property was not given, sold, or destroyed, it must still be in the estate.

■ Treas.Reg. § 25.2511–2(b) states that a gift is complete when "the donor has so parted with dominion and control [over

---

1. The 1981 amendments provide for a $10,000 per year, per donee exception. I.R.C. § 2035

(1985).

the property] as to leave him no power to change its disposition." Subsection (c) adds that a gift is incomplete when "a donor reserves the power to revest the beneficial title to the property in himself." *See also Burnett v. Guggenheim*, 288 U.S. 280, 286, 53 S.Ct. 369, 371, 77 L.Ed. 748 (1933), and *Estate of Sanford*, 308 U.S. at 43, 60 S.Ct. at 55–56, both emphasizing that the existence of a gift depends on effectual transfer of control over the economic benefits of property. *Cf. Dickman v. Commissioner*, 465 U.S. 330, 338 n. 7, 104 S.Ct. 1086, 1091 n. 7, 79 L.Ed.2d 343 (1984). Whether Mrs. McCarthy had "power" over the money in her checking account after writing the checks or instead had relinquished "dominion and control" also is a question of state law, for no federal rules govern when checks must be paid. The Supreme Court's cases confirm this principle. The Court has consistently said that "state law creates legal interests but ... the federal statute determines when and how they shall be taxed." *Burnet v. Harmel*, 287 U.S. 103, 110, 53 S.Ct. 74, 77, 77 L.Ed. 199 (1932); *see also United States v. Mitchell*, 403 U.S. 190, 197, 91 S.Ct. 1763, 1768, 29 L.Ed.2d 406 (1971) ("In the determination of ownership, state law controls."); *Blair v. Commissioner*, 300 U.S. 5, 9–10, 57 S.Ct. 330, 332, 81 L.Ed. 465 (1936) ("The question of the validity of the assignments is a question of local law."); *cf. Helvering v. Stuart*, 317 U.S. 154, 161, 63 S.Ct. 140, 144, 87 L.Ed. 154 (1942).

Hence, we must examine the relevant Illinois law regarding the completion of a gift. To constitute a valid gift, it is essential that the donee prove delivery of the property by the donor, with the intent to pass the title to the donee absolutely and irrevocably, and the donor must relinquish all present and future dominion and power over the subject matter of the gift. *In re Estate of Waggoner*, 5 Ill.App.2d 130, 125 N.E.2d 154 (3rd Dist.1955); *In re Estate of Jarmuth*, 329 Ill.App. 619, 70 N.E.2d 336 (1st Dist.1946); *Estate of Williams v. Tuch*, 313 Ill.App. 230, 39 N.E.2d 695 (1st Dist.1942). The gift must be completed and executed in the lifetime of the donor,

and if not so completed during her lifetime, her death revokes the part which has been performed. *In re Estate of Carlin*, 5 Ill. App.2d 241, 125 N.E.2d 649 (1st Dist.1955); *Waggoner*, 5 Ill.App.2d at 130, 125 N.E.2d 154.

■ The problematic element here is the requirement that the donor relinquish all present and future dominion and power over the subject matter of the gift. Illinois case law indicates that in the absence of consideration from the payee to the drawer of a check, a timely filing of a stop payment order by the drawer operates to extinguish any liability of the drawer to the payee. *Falco, Inc. v. Bates*, 30 Ill.App.3d 570, 334 N.E.2d 169 (4th Dist.1975); *see also Leavitt v. Charles R. Hearn, Inc.*, 19 Ill.App.3d 980, 312 N.E.2d 806 (1st Dist. 1974) (mere issuance of a check does not constitute an immediate assignment of funds from drawee to payee (citing Ill.Rev. Stat. ch. 26, para. 3–409(1) (1971))); *cf. Meyer v. Meyer*, 379 Ill. 97, 39 N.E.2d 311 (1942) (gift is not complete until note is paid). Hence, by operation of Illinois law the decedent failed to relinquish future dominion and power over the checks, thus preventing completion of the intended gifts. Therefore, section 2035(b)(2) of the Internal Revenue Code is inapplicable to the disputed checks which must now be included in the decedent's gross estate.

### III.

The district court alternatively based its holding upon an extension of the relation back doctrine articulated in *Estate of Spiegel v. Commissioner*, 12 T.C. 524 (1949). There, the tax court held that for purposes of allocating annual income tax deductions, a check delivered as a charitable contribution was considered a payment in the year delivered, even though not debited from the donor's account until the subsequent year. *Id.* at 529. This doctrine was expanded to the estate tax area in *Estate of Belcher v. Commissioner*, 83 T.C. 227 (1984), where the tax court held that delivery of a check for charitable purposes,

though cashed after the donor's death, relates back to the date of delivery and is therefore, not includible in a decedent's gross estate. *Id.* at 235.

In so holding, the tax court compared giving a charitable donation with the discharge of a bona fide legal obligation by payment of a check cashed after the transmitter's death. The court recognized that the tax regulations exclude from a decedent's gross estate any outstanding checks given in discharge of a bona fide legal obligation.[2] The court reasoned that this exclusion was based upon a "practical rule of a reason," since such payments would also be deductible under section 2035(a)(3) [sic] of the tax code as claims against the estate, thus creating a "wash." *Belcher,* 83 T.C. at 232. Drawing upon this same rationale, the court extended the relation back doctrine to outstanding checks issued to charitable donees, since "[t]he inclusion of these checks would at the very least create the possibility that they would qualify as section 2035 [sic] charitable deductions, again creating a 'wash.'" *Id.* The court, however, explicitly and emphatically distinguished charitable from noncharitable donees stating that, "policy considerations may well justify the inclusion of outstanding checks issued to noncharitable donees." *Id.* at 232, 238.

■ Citing the opinion of the district court, the appellees contend that the relation back doctrine should now be extended to noncharitable donees. Specifically, they maintain that as with charitable donations, no policy considerations justify including in a decedent's estate outstanding checks issued to noncharitable donees. However, the common element present both in regulation 20.2031–5 (exclusion of bona fide legal obligations) and *Belcher* which warranted application of the relation back doctrine was not merely the lack of a sufficiently compelling justification for inclusion; but, was rather the existence of an offsetting deduction creating the possibility of a wash. No such practical consideration extends to noncharitable gifts. No offsetting deduction exists for gifts made to noncharitable donees. The exclusion from a decedent's gross estate of gifts up to $3,000 operates only upon completion of that gift prior to the donor's death. I.R.C. § 2035(b)(2) (1980). It is circuitous to argue that this exemption supports application of the relation back doctrine in the same manner as the deductions available in *Belcher.* The exemption has no effect upon an incomplete gift and therefore, does not engender a wash as in *Belcher.*

Moreover, contrary to appellee's contentions, there remains sufficient justification compelling the inclusion of outstanding checks issued to noncharitable donees. The Internal Revenue Code now exempts only those gifts *made* by a decedent up to $10,000 per donee, per year. I.R.C. § 2035(b)(2) (1985). To the extent of that exemption, application of the relation back doctrine fosters estate tax avoidance. By issuing a check to a noncharitable donee with the understanding that it not be cashed until after his death, a decedent may effectively bequest up to $10,000 per donee, thus avoiding the estate tax consequences normally attending such transactions. Clearly, section 2035(b)(2) was never intended to operate in such a manner. Only after a donee has parted with complete dominion and control of funds does section 2035(b)(2) exempt them from the general rule that all gifts made within three years of death are to be included in the donor's gross estate. I.R.C. § 2035(a) (1985).

2. Section 20.2031–5, Estate Tax Regs. provides:
Sec. 20.2031–5 Valuation of cash on hand or on deposit. The amount of cash belonging to the decedent at the date of his death, whether in his possession or in the possession of another, or deposited with a bank, is included in the decedent's gross estate. If bank checks outstanding at the time of the decedent's death and given in discharge of bona fide legal obligations of the decedent incurred for an adequate and full consideration in money or money's worth are subsequently honored by the bank and charged to the decedent's account, the balance remaining in the account may be returned, but only if the obligations are not claimed as deductions from the gross estate.

For the foregoing reasons, the judgment of the district court is

REVERSED and REMANDED.