38 F.3d 118
 John A. METZGER; Z. Townsend Parks, Jr., Personal
Representatives for the Estate of Albert F.
Metzger, Deceased, Petitioners-Appellees,
v.
COMMISSIONER OF the INTERNAL REVENUE SERVICE, Respondent-Appellant.
 No. 93-2112.
 United States Court of Appeals,
Fourth Circuit.
 Argued April 15, 1994.
Decided Sept. 1, 1994.
Corrected Opinion Filed Oct. 18, 1994.
 
 ARGUED: Thomas J. Clark, Tax Div., U.S. Dept. of Justice, Washington, DC, for appellant. Luther Benjamin Ditch, Parks, Hansen, Ditch & Zaharris, Towson, MD, for appellees. ON BRIEF: Michael L. Paup, Acting Asst. Atty. Gen., Gary R. Allen, Richard Farber, Tax Div., U.S. Dept. of Justice, Washington, DC, for appellant.
 Before LUTTIG and WILLIAMS, Circuit Judges, and PAYNE, United States District Judge for the Eastern District of Virginia, sitting by designation.
 Affirmed by published opinion. Judge WILLIAMS wrote the majority opinion, in which Judge PAYNE joined. Judge LUTTIG wrote a separate dissenting opinion.
 OPINION
 WILLIAMS, Circuit Judge:
 
 
 1
 This is an appeal by the Commissioner of Internal Revenue from a decision of the United States Tax Court in favor of the taxpayer, the estate of Albert F. Metzger. The issue presented is whether noncharitable gifts in the form of checks are complete for federal gift tax purposes at the time of the unconditional delivery and deposit of the checks, or when the checks were actually honored by the drawee bank. The Tax Court concluded that, in the limited circumstances of this case, the bank's acceptance of the checks should "relate back" to the year in which they were delivered and deposited. We agree and affirm.
 
 I.
 
 2
 On August 26, 1985, Albert F. Metzger signed a power of attorney authorizing his son, John Metzger, to make gifts of property to Albert Metzger's heirs, legatees, and their spouses. Pursuant to this power of attorney, on December 14, 1985, John wrote four checks on his father's bank account, each in the amount of $10,000, payable to himself, his wife, his brother, and his brother's wife.[1] John and his wife deposited their checks into their joint bank account on December 31, 1985, but the checks did not clear Albert Metzger's account until January 2, 1986, after the New Year's holiday. Albert Metzger made additional gifts of $10,000 each to John and his wife in 1986, which cleared Albert Metzger's account in 1986.
 
 
 3
 Albert Metzger died on May 29, 1987, his estate was probated, and an estate tax return was filed with the IRS. The IRS audited the return and issued a notice of deficiency on January 25, 1991. The Internal Revenue Code exempts from gift tax the first $10,000 in gifts to a single person during a calendar year. In the course of the audit of Albert Metzger's estate tax return, the IRS determined that the checks delivered to John and his wife in December 1985 were gifts made in 1986 for gift tax purposes, because the drawee bank did not honor the checks until 1986. Consequently, the IRS concluded that in 1986 Albert Metzger had made gifts to John and his wife of $20,000 each, $40,000 total, of which $20,000 were taxable gifts that should have been reported on Albert Metzger's federal estate tax return. The IRS issued a notice of deficiency in the amount of $11,701 against Albert Metzger's estate.
 
 
 4
 Albert Metzger's estate (the taxpayer) challenged the notice of deficiency by filing a petition in the United States Tax Court. The parties stipulated to the relevant facts and presented, in cross-motions for summary judgment, the legal question regarding in which tax year these gifts were made. The Tax Court agreed with the Commissioner that, under the applicable Maryland law, gifts in the form of checks are not completed until they are actually honored by the drawee bank. Nevertheless, the Tax Court granted summary judgment to the taxpayer under the "relation-back" doctrine. Applying the relation-back doctrine, the Tax Court held that, once the checks were honored by the bank, the completed gifts related back to the date they were deposited for federal gift tax purposes. The Commissioner appeals.
 
 II.
 
 5
 Whether the noncharitable gifts Albert Metzger made by check to his son and daughter-in-law should be treated as completed gifts as of the date John and his wife deposited the checks is a question of law that we review de novo. Balkissoon v. Commissioner, 995 F.2d 525, 527 (4th Cir.), cert. denied, --- U.S. ----, 114 S.Ct. 473, 126 L.Ed.2d 424 (1993). The Internal Revenue Code imposes taxes on the transfer of property at the time of death, as well as on certain inter vivos transfers of property. See United States Trust Co. v. Helvering, 307 U.S. 57, 60, 59 S.Ct. 692, 693-94, 83 L.Ed. 1104 (1939); Estate of Sanford v. Commissioner, 308 U.S. 39, 44, 60 S.Ct. 51, 56, 84 L.Ed. 20 (1939). Estate taxes are calculated by computing a tentative tax on the sum of the amount of the taxable estate and the amount of adjusted taxable gifts. 26 U.S.C. Sec. 2001(b)(1). Adjusted taxable gifts are the total amount of the decedent's taxable gifts made after December 31, 1976. 26 U.S.C. Sec. 2001(b). Adjusted taxable gifts do not, however, include any gift which qualifies for the $10,000 annual exclusion provided in Sec. 2503(b).[2] Thus if Mr. Metzger's gifts to John and his wife do not exceed $10,000 each per year, and they qualify for the 2503(b) exclusion, his estate tax will be calculated only on the amount of his taxable estate. In order to qualify for the annual exclusion, gifts must be completed during the calendar year for which the exclusion is claimed. Sanford, 308 U.S. at 43-44, 60 S.Ct. at 55-56.
 
 
 6
 The question we must decide in this case is whether the $10,000 gifts that Albert Metzger made to his son and daughter-in-law were completed in 1985 or in 1986 for gift tax purposes. If the gifts were completed in 1985, they qualify for the annual exclusion under Sec. 2503(b); if the gifts were not completed until 1986, they must be combined with the other $10,000 gifts made to the son and daughter-in-law in that year. Therefore, Albert Metzger would have exceeded the annual exclusion for 1986, resulting in $20,000 of taxable gifts.
 
 
 7
 According to the gift tax regulations, a gift is complete when "the donor has so parted with dominion and control as to leave in him no power to change its disposition, whether for his own benefit or for the benefit of another." 26 C.F.R. Sec. 25.2511-2(b) (1993). The regulations further provide that "relinquishment or termination of a power to change the beneficiaries of transferred property ... is regarded as the event that completes the gift and causes the tax to apply," 26 C.F.R. Sec. 25.2511-2(f) (1993), and "[a] gift is incomplete in every instance in which a donor reserves the power to revest the beneficial titles to the property in himself," 26 C.F.R. Sec. 25.2511-2(c) (1993).
 
 
 8
 We refer to state law to determine whether a donor has relinquished dominion and control over a gift in the form of a check, Estate of Dillingham v. Commissioner, 903 F.2d 760, 763 (10th Cir.1990), and the parties agree that Maryland law is controlling. The Tax Court held, and we agree, that under Maryland law the delivery of a personal check is only conditional payment, and the gift remains incomplete until the donee presents the check for payment and the check is accepted by the drawee bank. See Malloy v. Smith, 265 Md. 460, 290 A.2d 486, 487-88 (1972); accord Ward v. Federal Kemper Ins. Co., 62 Md.App. 351, 489 A.2d 91, 95 (1985).[3] Thus, applying Maryland law, Albert Metzger did not completely relinquish dominion and control of the funds given to his son and daughter-in-law until January 2, 1986, when the check was accepted by his bank and his account was debited. Therefore, under Sec. 25.2511-2(b) the gift was not completed until 1986. This brings us to the Tax Court's application of the relation-back doctrine, which the IRS contends is contrary to the regulations.
 
 
 9
 The Tax Court first applied the relation-back doctrine in the context of income tax deductions for charitable contributions. Estate of Spiegel v. Commissioner, 12 T.C. 524, 1949 WL 182 (1949). In Spiegel, the IRS disallowed tax deductions for charitable contributions in the year checks were delivered because they were not deposited until the following year. The Tax Court found that because the checks had been unconditionally delivered, promptly presented for payment, and duly paid upon presentment, the payment of the checks related back to the date of delivery, and thus the charitable deductions should have been allowed for the year of delivery. Id. at 533.
 
 
 10
 The Tax Court subsequently applied the relation-back rule from Spiegel in the context of estate taxes and charitable donations in Estate of Belcher v. Commissioner, 83 T.C. 227, 1984 WL 15603 (1984). In Belcher, checks were mailed to charitable donees prior to the donor's death but not paid until after his death. The Tax Court held that the funds were not part of the gross estate because the conditional payment that occurred when the checks were delivered became absolute upon presentment and payment by the drawee bank, and related back to the date of delivery. It is significant to note that the very same gift tax regulations applicable in Belcher are relevant in this case. The IRS contends that a strict interpretation of the gift tax regulations does not support invocation of the relation-back doctrine in the estate tax context. Even if this assertion is true, Belcher was equally inconsistent with the regulations, and the Commissioner did not challenge that application of the relation-back doctrine. Rather, the Commissioner merely asserted that for policy reasons noncharitable gifts should be treated differently. Because the Tax Court has incorporated the doctrine into the estate tax area in cases such as Belcher where circumstances warranted, we also look beyond the regulation to consider whether its incorporation is warranted here.
 
 
 11
 Despite its extension of the relation-back doctrine to charitable donations and estate taxes in Belcher, the Tax Court, following the reasoning of the Seventh Circuit in McCarthy v. United States, 806 F.2d 129 (7th Cir.1986), declined to extend the doctrine to noncharitable gifts in the estate tax context in the specific circumstances presented in Estate of Dillingham v. Commissioner, 88 T.C. 1569, 1987 WL 31366 (1987), aff'd, 903 F.2d 760 (10th Cir.1990), and Estate of Gagliardi v. Commissioner, 89 T.C. 1207, 1987 WL 257913 (1987). The IRS argues that these precedents cannot be adequately distinguished from the present case and thus require our rejection of the relation-back doctrine. We disagree.
 
 
 12
 In McCarthy, 806 F.2d at 130, the donor wrote and either mailed or delivered nine checks of $3,000 each during the period between May 15 and 22, 1980. The checks were intended as gifts to various relatives. Id. The donor died on May 24, 1980, and none of the checks were cashed before that time. Id. The Seventh Circuit first concluded that under the applicable state law the donor had not relinquished dominion and control over the checks, "thus preventing completion of the intended gifts" and requiring that the funds be included in the gross estate. Id. at 131. The Seventh Circuit then declined to extend the relation-back doctrine because there was no offsetting deduction as there was in the Belcher case,[4] and also because application of the relation-back doctrine might foster estate tax avoidance if donors issued checks with the understanding that they not be cashed until after the donor's death. Id. at 132.
 
 
 13
 Similar facts were present in Gagliardi. The donor delivered checks to his children on February 4 and 18, and died on February 22. 89 T.C. at 1209. Some of the checks were cashed before the donor's death and some were cashed after his death. Id. The Tax Court held, for the same reasons discussed in McCarthy, that the relation-back doctrine should not be extended in the estate tax context to the checks that were not cashed before the donor's death. Id. at 1212-13. We do not dispute the wisdom of declining to extend the relation-back doctrine in the circumstances presented in McCarthy and Gagliardi, when the donor died while the checks were still outstanding. Clearly there is a very real danger of fostering estate tax avoidance in cases in which checks are not cashed until after the donor dies. However, that is not the situation in this case.
 
 
 14
 More analogous to this case are the facts presented in Estate of Dillingham. In Dillingham, the donor delivered six checks in the amount of $3,000 each to six different individuals on December 24, 1980. 88 T.C. at 1570. The donees did not present the checks for payment at the drawee bank until January 28, 1981, over thirty days after the checks were delivered and on the same day that six additional checks for $3,000 each were delivered to these individuals. Id. The donor died June 7, 1981. Id. The question presented in Dillingham was the same as it is in this case, namely, whether the noncharitable gifts made by check were complete for gift and estate tax purposes in the year the checks were delivered to the donee. Id. Although the Tax Court declined to apply the relation-back doctrine and hold that the gifts were complete in 1980, it stated:
 
 
 15
 [b]ecause the checks in the present cases were cashed before the decedent's death, the concern of this Court in Belcher and the Circuit Court in McCarthy that the donees might have a secret agreement with the donor that the checks would not be cashed until after the donor's death is not present.
 
 
 16
 Id. at 1574. Rather, the Tax Court based its decision not to extend the relation-back doctrine on its concern about the delay between the time of delivery of the checks and the time the checks were cashed. Id. Specifically, the Tax Court held that this delay cast doubt as to whether the checks were unconditionally delivered, and the taxpayer's reliance on the delivery of the checks alone, without proof of unconditional delivery, did not warrant extension of the relation-back doctrine. Id. at 1574-75.
 
 
 17
 In affirming the Tax Court's decision in Dillingham, the Eleventh Circuit referred to the Seventh Circuit's reasoning in McCarthy and declined to extend the relation-back doctrine to the circumstances in Dillingham. 903 F.2d at 764-65. In doing so, however, the Eleventh Circuit explicitly stated that it "express[ed] no opinion as to circumstances where the late December gifts are cashed immediately after the New Year holidays, when financial institutions are closed. Sufficient to say that those are not the circumstances of this case." Id. at 765 n. 7.
 
 
 18
 They are the circumstances with regard to the Estate of Albert Metzger and, in these limited circumstances, application of the relation-back doctrine is appropriate. Here the checks were delivered and deposited in December 1985, more than a year before Albert Metzger died. The checks did not clear Albert Metzger's account until 1986 due to applicable bank procedures, the New Year's holiday, and the fact that Albert Metzger's account was with a different bank than his son and daughter-in-law's account. In contrast to McCarthy and Gagliardi, the facts in this case do not implicate the concern with averting estate tax avoidance because there was no intervening death between the time the checks were delivered and the day they were deposited. Moreover, unlike Dillingham, the son and daughter-in-law in this case timely deposited the checks, leaving no legitimate dispute regarding Albert Metzger's intent to make a gift and his unconditional delivery of the checks.
 
 
 19
 Thus, we are presented with a very limited situation in which there is no uncertainty as to the donor's intent and unconditional delivery of the gifts, and no danger of a scheme to avoid estate taxes. In such a limited circumstance, where noncharitable gifts are deposited at the end of December and presented for payment shortly after their delivery but are not honored by the drawee bank until after the New Year's holiday, we agree with the Tax Court that the gifts should relate back to the date of deposit. As the Tax Court held:
 
 
 20
 We see no reason for refusing to apply the relation-back doctrine to noncharitable gifts where the taxpayer is able to establish: (1) The donor's intent to make a gift, (2) unconditional delivery of the check, and (3) presentment of the check within the year for which favorable tax treatment is sought and within a reasonable time of issuance. Assuming these elements are present, the practical realities of everyday commerce recognized in Estate of Spiegel v. Commissioner, 12 T.C. 524, 529 (1949), require a limited extension of the relation-back rule.
 
 
 21
 (J.A. at 71-72.)
 
 
 22
 We agree with this limited extension, and are not persuaded that it is inconsistent with the regulations as they have been applied or inconsistent with other precedent. Accordingly, we affirm.
 
 
 23
 AFFIRMED.
 
 LUTTIG, Circuit Judge, dissenting:
 
 24
 In language that could not be clearer, section 25.2511-2 of the Internal Revenue Service's gift tax regulations provides that a gift of property is not complete, and therefore not excludable under 26 U.S.C. Sec. 2503(b), until "the donor has so parted with dominion and control as to leave in him no power to change its disposition, whether for his own benefit or for the benefit of another." 26 C.F.R. Sec. 25.2511-2(b); see also id. Sec. 25.2511-2(c) ("A gift is incomplete in every instance in which a donor reserves the power to revest the beneficial title to the property in himself...."). Thus, under the regulations, "[t]he relinquishment or termination of a power to change the beneficiaries of transferred property ... is regarded as the event that completes the gift and causes the tax to apply." Id. Sec. 25.2511-2(f).
 
 
 25
 Despite this unambiguous language, the majority holds that checks delivered in December 1985, but not honored by the drawee bank until January 1986, can be excluded as a 1985 gift, even though the drawer concededly retained the power to stop payment of the checks and direct the funds to other beneficiaries until the checks were honored. Compare Estate of Gagliardi v. Commissioner, 89 T.C. 1207, 1213, 1987 WL 257913 (1987) ("[W]e have not found any state that recognizes delivery of a check to be a completed gift of the underlying funds."). Acknowledging that the drawer's gift was not excludable until 1986 under the express terms of section 25.2511-2, the majority rests its decision on yet another "limited extension" of the so-called "relation-back" doctrine:
 
 
 26
 [A]pplying Maryland law, Albert Metzger did not completely relinquish dominion and control of the funds given to his son and daughter-in-law until January 2, 1986, when the check was accepted by his bank and his account was debited. Therefore, under Sec. 25.2511-2(b) the gift was not completed until 1986.
 
 
 27
 [However,] [i]n such a limited circumstance, where noncharitable gifts are deposited at the end of December and presented for payment shortly after their delivery but are not honored by the drawee bank until after the New Year's holiday ... the gifts should relate back to the date of deposit.
 
 
 28
 Ante at 121, 123.
 
 
 29
 The relation-back doctrine was created out of whole cloth by the Tax Court in 1949. See Estate of Spiegel v. Commissioner, 12 T.C. 524, 1949 WL 182 (1949). Since its creation, the doctrine has been applied (or not) by the Tax Court, the Internal Revenue Service, and other federal courts based upon nothing more than perceived necessities of policy and equity in particular cases, as the majority's canvassing of these opinions reveals. Id. at 529 (adopting doctrine for charitable contributions in income tax context; indulging fiction that donor "made a conditional payment of charitable contributions [in 1942] which, upon the presentation and payment of the checks [in 1943], became absolute and related back to the time when the checks were delivered"); Estate of Belcher v. Commissioner, 83 T.C. 227, 232, 1984 WL 15603 (1984) (extending doctrine to charitable contributions in estate tax context; "policy considerations" weigh against "the inclusion [in the gross estate] of outstanding checks issued in good faith by the decedent to charitable donees prior to his death but cashed after his death"); Estate of Dillingham v. Commissioner, 88 T.C. 1569, 1574-75, 1987 WL 31366 (1987), aff'd, 903 F.2d 760 (10th Cir.1990) (rejecting application of doctrine to noncharitable gifts in estate tax context; noting, though, that Belcher's concern of a secret agreement between donor and donee, that checks would not be cashed until donor's death, not implicated); Estate of Dillingham v. Commissioner, 903 F.2d 760, 764-65 (10th Cir.1990) (noting that potential for fraud exists where checks were distributed in one year and cashed on same day in late January of following year); McCarthy v. United States, 806 F.2d 129, 132 (7th Cir.1986) (rejecting extension of doctrine to noncharitable gifts in estate tax context; no "practical considerations," such as offsetting deduction, support extension of doctrine to noncharitable gifts and extension of doctrine would encourage tax avoidance); Estate of Gagliardi v. Commissioner, 89 T.C. 1207, 1212-13, 1987 WL 257913 (1987) (rejecting extension of doctrine to noncharitable gift checks written before, but cashed after, decedent's death because policy considerations of Belcher did not support extension).
 
 
 30
 The majority's opinion is paradigmatic of this policy-driven decisionmaking, basing its decision that the doctrine should apply in this case on its conclusion that there is "no danger of a scheme to avoid estate taxes" of a kind that prompted rejection of the doctrine by the Tax Court and the Tenth Circuit in Dillingham. See ante at 123; see also id. at 122 (accepting the "wisdom" of McCarthy's and Gagliardi's rejection of doctrine where checks were not cashed until after donor's death, given potential for tax avoidance).
 
 
 31
 No one even argues that the relation-back doctrine can be reconciled with the plain language of section 25.2511-2. See, e.g., ante at 121-22 (we must "look beyond the regulation to consider whether its incorporation is warranted here"). Indeed, the doctrine's express purpose is to allow tax deductions for gifts of property that would not be allowed under the IRS regulations as written.
 
 
 32
 Moreover, the doctrine would appear to be invalid, at least in the gift and estate tax context, under the reasoning of the Supreme Court's decision in Estate of Sanford v. Commissioner, 308 U.S. 39, 60 S.Ct. 51, 84 L.Ed. 20 (1939). There, the Court addressed the question of whether an inter vivos transfer of property in trust, where the donor reserved to himself the power to name new beneficiaries, constituted a completed gift for purposes of the predecessor statute to 26 U.S.C. Sec. 2501 et seq., pursuant to which the regulations at issue in this case were promulgated. The Court held that the property transfer did not constitute a completed gift until the donor "fully parted" with all dominion and control over the property. Sanford, 308 U.S. at 43-45, 60 S.Ct. at 55-56; see also Burnet v. Guggenheim, 288 U.S. 280, 286, 53 S.Ct. 369, 371, 77 L.Ed. 748 (1933) (for purposes of federal gift tax statutes, "a gift is not consummate until put beyond recall"). From the Supreme Court's holding in Sanford that a gift in trust is not complete until all power to control disposition of any interest in the property is relinquished, it would seem to follow that the relation-back doctrine is invalid, because the doctrine deems a gift complete when the donor still possesses dominion and control over the property. See Sanford, 308 U.S. at 49, 60 S.Ct. at 58 (predecessor regulation to 26 C.F.R. Sec. 25.2511-2 "is declaratory of the correct construction of" the predecessor to the current gift tax statute).
 
 
 33
 Rather than acquiesce further in the ad hoc, quasi-legislative rule-making that has seduced the Tax Court, the IRS, and the federal courts of appeals alike, and which is suspect in any event under existing Supreme Court authority, I would abandon the relation-back doctrine altogether and abide by the plain language of the regulation. Unlike the majority, I find no comfort in the fact that extending the relation-back doctrine to the circumstances here is not "inconsistent with the regulations as they have been applied or inconsistent with other precedent." Ante at 123. I also find no solace in the majority's statement that to the extent the plain words of the regulation at issue in Belcher failed to authorize relation-back, "Belcher was equally inconsistent with the regulations." Id. at 121-22. The fact remains that in all of the above-discussed contexts the relation-back doctrine was applied in direct contravention of, and so as to circumvent, the plain language of the governing statutes and regulations.
 
 
 34
 In Spiegel, the Tax Court invoked the doctrine to avoid the statutory requirement that a "payment" be made in the year for which the corresponding deduction is sought, see 26 U.S.C. Sec. 170(a)(1) (statute for charitable contribution income tax deductions) (formerly section 23(o) of the Internal Revenue Code);* the same court, in Belcher, resorted to the doctrine to skirt the statutory and regulatory requirement that all property in which the decedent had an "interest" be included in the decedent's gross estate, see 26 U.S.C. Secs. 2031, 2033; 26 C.F.R. Sec. 20.2031-5; and in the Tax Court below, and now by the majority here, the doctrine has been extended to escape the reach of the controlling regulations requiring that a donor part with all dominion and control over property before his gift be considered complete, see 26 C.F.R. Sec. 25.2511-2. As applied in these contexts, the relation-back doctrine is simply insupportable as a matter of law, even if it is sound as a matter of policy.
 
 
 35
 Applying 26 C.F.R. Sec. 25.2511-2 as it is written and was duly promulgated, it is plain that the donor's gifts in this case were not complete until 1986, and therefore that they were not excludable in 1985. Because the Tax Court reached the contrary conclusion, I would reverse its judgment.
 
 
 
 [1]
 The checks made payable to John's brother, William F. Metzger, and William Metzger's wife are not at issue in this case
 
 
 [2]
 Because Mr. Metzger died after December 31, 1981, his gross estate (and ultimately his taxable estate) did not include any gifts he made during the three years preceding his death and for which he was not required to file a gift tax return (then a $3,000 annual exclusion amount). For decedents who died after 1982, gifts in excess of the annual exclusion ($10,000) are not part of the "gross estate" or the "taxable estate" but are considered in calculating the estate tax under Sec. 2001(b)(1)(B) as "adjusted taxable gifts."
 
 
 [3]
 The taxpayer contended before the Tax Court that the power of attorney given to John Metzger was such that it ratified and confirmed all lawful acts of the agent and, therefore, Albert Metzger could not have lawfully regained control and dominion of the funds by stopping payment on the checks. Although this argument is noted on appeal, the taxpayer retreats from the position that the authority delegated in the power of attorney would have prevented Albert Metzger from stopping payment on the checks. Instead, the taxpayer merely relies on the power of attorney provisions to support his contention that there was clear donative intent. As we discuss below, we believe that, regardless of the power of attorney provisions, the donative intent in this case is clear
 
 
 [4]
 In the Belcher context, even if the checks made to charitable donees were included in the estate "they would qualify as section 2055 [sic] charitable deductions ... creating a wash." 83 T.C. at 232
 
 
 *
 The Treasury Department now, by regulation, defines "payment" so as to include the unconditional delivery of a subsequently honored check. This regulation renders application of the doctrine in the income tax context irrelevant. See 26 C.F.R. Sec. 1.170A-1; Rev. Rul. 54-465, 1954-2 C.B. 93; Williams v. Commissioner, 429 U.S. 569, 583, 97 S.Ct. 850, 858, 51 L.Ed.2d 48 (1977) (approving in dicta Spiegel's interpretation of "payment"). However, the doctrine is no more defensible even in the income tax context, as the dissent in Spiegel would have held, and as the I.R.S. confirms in its insistence that its new regulation merely "deems" payment made at the time of delivery
 Whether one accepts the validity of the doctrine in the income tax context, however, there is no comparable statutory or regulatory provision in the gift or estate tax context that would either obviate the need for the doctrine or otherwise justify its application.