In the Matter of the Estate of GEORGE E. GIBBONS, Deceased.

Surrogate's Court, St. Lawrence County, April 1, 1931.

*George H. Bowers* and *R. E. Heffernan*, for the executor.

*Horace C. Hale* and *Dunmore, Ferris & Dewey* [*Henry T. Dorrance* of counsel], for the contestants.

*Andrew J. Hanmer*, for the beneficiaries.

CHANEY, S. This is a proceeding to determine the validity and effect of the 2d paragraph of the will, which paragraph is as follows: " I direct that any checks I may have issued and which may be outstanding at my death be treated as valid claims against my estate and paid by my executor hereinafter named."

The will was made May 14, 1930. Testator died May 19, 1930. After the making of this will the testator issued and delivered two checks which were presented at the bank and paid and charged to his account before his death. One of these checks was given to Theresa Vandelinder and one to Leona Bowering. These checks cannot be questioned, because even as gifts the transactions were completed during the lifetime of the testator.

The testator issued several other checks between the date of the will and his death; they were delivered, but none of them presented at the bank or cashed before his death; and these checks were accordingly outstanding at the time of his death. The checks thus referred to are as follows:

1. Check dated May 17, 1930, for $142.85, payable to Ruth L. Marshall.

2. Check dated May 17, 1930, for $50, payable to George Rice.

3. Check dated May 17, 1930, for $64, payable to James E. Vandelinder.

4. Check dated May 17, 1930, for $1,000, payable to Herbert Lawrence.

5. Check dated May 17, 1930, for $1,000, payable to Mrs. Helen Fields.

6. Check dated May 17, 1930, for $142.85, payable to Flora E. Peterson.

7. Check dated May 17, 1930, for $142.85, payable to Francis E. Roberts.

8. Check dated May 17, 1930, for $142.85, payable to Clyde W. Gibbons.

9. Check dated May 17, 1930, for $62, payable to Thomas E. Gibbons.

10. Check dated May 14, 1930, for $25, payable to Sarah Gibbons.

11. Check dated May 14, 1930, for $325, payable to Mabel Gibbons.

12. Check dated May 14, 1930, for $325, payable to Maud Gibbons.

It appears from the testimony offered that the testator was a man upwards of eighty years of age; that he had found it necessary in the transaction of his business to give to his nephew a power of attorney to act for him in certain instances; that after this will was made testator instructed his said nephew, Thomas Gibbons, to prepare these checks, and that they were prepared and signed by said nephew as attorney or agent; that these checks were afterward, and in the lifetime of the testator, delivered to the payees or to certain other relatives in their behalf and for them.

It seems to be well established that checks are orders on the bank to pay certain sums; that they do not constitute a transfer and delivery of that fund until presented at the bank and paid, because that fund still remains subject to the control and order of the testator; and, therefore, such checks do not constitute gifts either *inter vivos* or *causa mortis*. (*Curry* v. *Powers*, 70 N. Y. 212; *Matter of Rosenthal*, 132 Misc. 290; *Glennan* v. *Rochester Trust & S. D. Co.*, 209 N. Y. 12, 16; Neg. Inst. Law, § 325.)

It is contended on the part of the executor that the 2d paragraph of the will above mentioned constitutes legacies to the various payees according to the amounts specified in those checks. The difficulty in arriving at such a construction is that the checks are not mentioned or in any way identified in and by the will, and furthermore were not in existence at the time of the execution of the will.

In *Dyer* v. *Erving* (2 Dem. 160) the opinion contains the following: " Upon a review of every reported case bearing upon this subject, which by diligent search I have been able to discover, I hold:

" *First.* That words of reference in a will will never suffice to incorporate the contents of an extraneous paper, unless it can be clearly shown that, *at the time such will was executed, such paper was actually in existence.*

" *Second.* That an extraneous paper produced as and for a paper so referred to in a will, and shown to have been in existence when such will was executed, may be adjudged to form part of such will and be admitted to probate as such, under these circumstances, and no other, to wit, when by satisfactory and conclusive evidence *it has been proved to be the same paper which the testator by his words of reference designed to indicate.*"

In *Matter of Acres* (128 Misc. 254, 257) Surrogate HARRINGTON states in his opinion as follows: " In Schouler on Wills ([6th ed.] § 400) it is stated that the modern English and American rule is that extraneous, unattested documents may be incorporated into a will provided such documents were in existence at the time of the execution of the will, and are identified by clear and satisfactory proof as the papers referred to therein. In this State, however,

the law seems well established that unattested documents, containing testamentary dispositions not authenticated according to the provisions of the Statute of Wills, will not be held to be a part of a valid will simply because they were referred to in the will."

Finally, can we follow the direction of the testator as expressed in the 2d paragraph of his will, and treat these checks as valid claims against the estate? To do so would simply convert these checks into gifts or legacies, because no valid claims against the estate have thus far been proved on behalf of the payees. It does appear that certain services were performed by one or two of the payees, and it may be that such persons will be able to establish legal claims against the estate; and in such instances the checks and the provisions in the will would undoubtedly be regarded as admissions on the part of the testator that he felt under some obligation to pay them for their services.

Let us suppose that the testator had given to several interested relatives slips of paper, with certain figures thereon indicating the amount of money which he intended each to have, and had then stated in his will that such papers should be treated as valid claims for the respective amounts thereon stated. It seems to me that such reference to extraneous papers, not in existence when the will was drawn, and not identified therein, would be contrary to well-established precedent.

In some instances the courts have distinguished between extraneous papers of a testamentary character and extraneous papers referred to for identification purposes only. It is sometimes extremely difficult to distinguish, because the two classes of cases seem to run into each other by almost imperceptible gradations. In this case, in the will no specific amounts are mentioned, and the names of the beneficiaries or claimants are not even mentioned; so that I believe this is a case within the prohibition against reference to extraneous documents of testamentary character. (*Matter of Perry*, 126 Misc. 616.)

In support of the validity of this provision in the will, counsel have cited *Matter of Fowles* (222 N. Y. 222). In that case the testator directed, in case of a common disaster in which he and his wife should perish under such circumstances that it could not be determined which was the first to die, that his wife should be deemed the survivor, and that his estate should go as her will directed. The Court of Appeals, by a four to three decision, recognized and sustained as valid testator's intention, and held that his property should pass under the terms of his wife's will, although there was no proof that she was alive when he died, or that his will referred to any existing or specific will of his wife.

In the *Fowles* case we find this significant statement in the opinion of Judge CARDOZO (on p. 231): " Everything that this testator did is justified by our decision in *Matter of Piffard* (111 N. Y. 410, 414, 415)." And again (on p. 232): " *Piffard's* case cannot be distinguished. It ought not to be overruled. Only the clearest error would warrant us in baffling the just hopes and purposes of this testator by disregarding a decisive precedent. * * * The rule against incorporation has not been set aside. It has been kept within bounds which were believed to be wise and just."

In the *Fowles* case, as I understand it, after considering the opinion of the surrogate and the prevailing opinion in the Court of Appeals, it was not necessary to determine that the wife survived, and it was not, therefore, necessary to take the 9th clause of that will as a direction by testator to the court to alter an established presumption or canon of construction.

While it is true that a man may do as he pleases with his own property when he comes to making a will, unless he runs counter to some rule of law or public policy, at the same time it is better to adhere to well-settled rules of construction rather than to make for a particular case new ones, the effect of which when put into practice would afford unlimited opportunity for fraud and miscarriage of justice and equity.

I accordingly hold that the checks outstanding at the time of testator's death, as above mentioned, are not valid gifts, or legacies, or claims against said estate.