Robert ROSANO, as Executor
of the Estate of Mary R.
Rosano, Plaintiff,

v.

**UNITED STATES of America,**
**Defendant.**

**No. 97–CV–5361–JS MLO.**

United States District Court,
E.D. New York.

Sept. 20, 1999.

114

A. Lawrence Washburn, Jr., New York, NY, for Plaintiffs.

Alan Shapiro, Trial Attorney, Tax Division, United States Department of Justice, Washington, DC, Thomas A. McFarland, Assistant United States Attorney, E.D.N.Y., Brooklyn, NY, for Defendant.

## ORDER ADOPTING REPORT & RECOMMENDATION

SEYBERT, District Judge.

Pending before the Court are the objections of both plaintiff and defendant to the July 29, 1999 Report and Recommendation of Magistrate Judge Michael L. Orenstein regarding the defendant's motion for summary judgment in this action for recovery of estate taxes. Magistrate Judge Orenstein, in a thorough and well-reasoned report, recommended to this Court that the defendant's motion be granted in part and denied in part.

Defendant timely filed what it termed its "Acknowledgment of Mootness Regarding One Issue, and Objection With Respect to Another" on August 9, 1999. Plaintiff filed his objections to the Report and Recommendation on August 12, 1999. Defendant filed its opposition to the plaintiff's objections on August 23, 1999. The plaintiff submitted no response to the defendant's objections.

Pursuant to Fed.R.Civ.P. 72, this Court has conducted a de novo review of the magistrate judge's findings and conclusions. The Court also has considered the parties' respective objections to the report and recommendation. For the reasons discussed below, the report and recommendation is ADOPTED in full, subject to this Court's modifications as set forth below. See Fed.R.Civ.P. 72(b) ("district judge may accept, reject, or modify the recommended decision [or] receive further evidence"). As a result of the modifications to the recommendation, the defendant's motion for summary judgment is GRANTED in its entirety.

The factual background of this case is set forth explicitly in the report and those facts will not be repeated here. See Report and Recommendation at 1–4. Essentially, the magistrate judge recommended that the defendant's motion for summary judgment be granted in its entirety, except on two points. First, the magistrate judge found the existence of a material issue of fact regarding whether the two checks which were dated December 29, 1989 but which cleared on January 3, 1990 were in fact deposited in 1989. If the checks were, in fact, deposited in 1989, as claimed by plaintiff, they would be excludable from the decedent's gross estate. The defendant disputes that these checks were deposited in 1989. See Report and Recommendation, at 12–13.

The second issue of material fact identified by the magistrate judge pertains to two checks drawn on the Merrill Lynch account. One of these checks was made payable to Lawrence Washburn and the other to Robert Livingston. Plaintiff claims that these checks were not gifts, but rather were payments for legal services and real estate taxes, and thus were excludable from the gross estate. Defendant claims that the plaintiff waived this argument because he failed to raise it in the administrative proceeding. The magistrate judge, noting that neither party had submitted the administrative record of the plaintiff's claim for refund, reported that there was a material issue of fact regarding whether these checks were gifts or payments for services rendered. See Report and Recommendation, at 17–18.

### DEFENDANT'S OBJECTIONS

Defendant now asserts that the first issue regarding the date of deposit of the EAB checks is moot. Defendant argues that the magistrate judge accepted the argument that the other two EAB checks at issue (those dated January 5, 1990 but

which cleared after decedent's death) were properly includable in the gross estate. Defendant now points out that the magistrate judge's recommended disposition "supports the inclusion in the decedent's gross estate of an amount ... that actually is slightly larger than the amount upon which the IRS based the assessments at issue." United States' Acknowledgment and Objection, at 4. In short, according to the defendant, the tax assessment is based on the value of only two, and not all four, of the Gallucci checks being included in the gross estate. *Id.* Plaintiff has made no response to this argument.

Having reviewed the defendant's position on this matter, the Court agrees that this issue is moot. Therefore, summary judgment will be granted on the issue of the Gallucci checks.

■ Regarding the second issue, defendant essentially admits that it failed to include the administrative record as part of its motion papers, but now has supplied the Court with a copy of the plaintiff's Form 843 and the memorandum that accompanied it. A district court, on review of a report and recommendation, is permitted to consider additional evidence as part of its review of the recommended disposition of a motion. Fed.R.Civ.P. 72(b).

■ As noted previously, the plaintiff has not responded to this objection. Moreover, from a review of the plaintiff's Form 843 and the accompanying memorandum, it is apparent that the plaintiff failed to raise any argument in the administrative proceedings that the two Merrill Lynch checks at issue were payments for legal services and real estate taxes, rather than gifts. As a result, plaintiff is barred from raising this argument in these proceedings. *See Angelus Milling Co. v. Commissioner,* 325 U.S. 293, 296, 299, 65 S.Ct. 1162, 89 L.Ed. 1619 (1945); *United States v. Felt & Tarrant Mfg. Co.,* 283 U.S. 269, 272–73, 51 S.Ct. 376, 75 L.Ed. 1025 (1931); *Alabama By–Products Corp. v. Patterson,* 258 F.2d 892, 900 (5th Cir.1958)

("[a]ll grounds upon which a taxpayer relies must be stated in the original claim for refund ... [and] [a]nything not raised at that time cannot be raised later in a suit for refund.") (citations omitted).

Because the plaintiff's argument that the Washburn check and the Livingston check were not gifts was not raised in the administrative proceeding, such argument was waived. Therefore, the defendant's motion for summary judgment on the issues regarding the Merrill Lynch checks is GRANTED.

### PLAINTIFF'S OBJECTIONS

Each of plaintiff's nine objections are overruled. The Court has considered plaintiff's objections and the defendant's responses thereto, and has concluded that none of the issues raised in the plaintiff's objections compels a result different than that recommended by Magistrate Judge Orenstein. The New York statutes cited by plaintiff have no bearing on the precise issues in this case. Finally, plaintiff admits that the magistrate judge correctly applied existing law, and the Court declines the plaintiff's invitation to creatively extend the law to reach the result he desires.

### CONCLUSION

The Report and Recommendation of Magistrate Judge Orenstein is ADOPTED subject to the modifications stated above, and the defendant's motion for summary judgment is GRANTED in its entirety. The Clerk of the Court is directed to close this case.

SO ORDERED.

### REPORT AND RECOMMENDATION

ORENSTEIN, United States Magistrate Judge.

Pursuant to the Order of District Judge Joanna Seybert, dated March 23, 1999, the defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules

of Civil Procedure has been referred to the undersigned. For the reasons that follow, this Court respectfully reports and recommends that the defendant's motion be **GRANTED** in part and **DENIED** in part.

## FACTUAL BACKGROUND

On September 17, 1997, the plaintiffs commenced the within action seeking a refund of estate taxes, interest and penalties thereon in the amount of $181,939. The decedent, Mary Rosano, died on January 21, 1990. (Def. 56.1 Stat. at ¶ 1)[1] At the time of her death, she was domiciled in the state of New York. The decedent's son, Robert S. Rosano, was appointed executor of her estate. (*Id.*) Decedent's other son, Lawrence R. Rosano, along with Robert S. Rosano are beneficiaries of the decedent's estate, and are named as plaintiffs in this action.[2]

At all times relevant to this case, the decedent maintained a checking account with European American Bank (hereinafter "EAB"), and a cash management account with Merrill Lynch. Title to the EAB account was held in the names Mary R. Rosano or Robert R. Rosano. (*See* Ex. 3 and Ex. 5 of the defendant's exhibits.) The Merrill Lynch account was entitled "Mary R. Rosano and Robert R. Rosano and Lawrence R. Rosano JTWROS (joint tenants with right of survivorship)." (*See* defendant's exhibits 8, 10 and 11). At issue in this action are certain checks drawn on these accounts. Four of the checks were written on the EAB account, and forty-three of the checks were written on the Merrill Lynch account.

Plaintiffs allege in its complaint and claim for a refund that the checks at issue were gifts to members of decedent's family or close friends. For purposes of this motion for summary judgment, the defendant agrees to assume that these checks were in fact gifts, made with the requisite donative intent of the decedent. *See* Def.'s supporting mem. at 2, and Def.'s reply mem. at 5, fn. 7.

Specifically, Ronda Gallucci received a $9,950 check drawn on the EAB account, dated December 29, 1989. (Def. 56.1 Stat. at ¶ 2) That check, however, did not clear until January 3, 1990. (*Id.*) Thereafter, Ms. Gallucci received a second check, dated January 5, 1990 in the amount of $9,990 drawn on the EAB account. (Def. 56.1 Stat. at ¶ 3) This check cleared on January 30, 1990, after the decedent's January 21, 1990 death. (*Id.*) For tax purposes, the decedent's estate treated these checks as two gifts—one gift for $9,950 made in 1989 and one gift for $9,990 made in 1990. (Def. 56.1 Stat. at ¶ 4).

Raymond J. Galluci received a $9,950 check drawn on decedent's EAB checking account, dated December 29, 1989. (Def. 56.1 Stat. at ¶ 5) The check cleared on January 3, 1990. (*Id.*) Raymond J. Galluci received another check in the amount of $9,990, dated January 5, 1990, drawn on the decedent's EAB checking account. (Def. 56.1 Stat. at ¶ 6) That check cleared on January 30, 1990. (*Id.*) For tax purposes, the decedent's estate treated these two checks as two gifts, one made in 1989 in the amount of $9,950 and the other for $9,990 in 1990. (Def. 56.1 Stat. at ¶ 7).

Decedent issued a series of forty-three checks from her Merrill Lynch account that cleared after her death. These checks total $431,454.87. (Def. 56.1 Stat. at ¶ 9) The decedent's estate did not in-

---

1. "(Def. 56.1 Stat. at ¶ _ )" refers to the defendant's 56.1 Statement of Material Facts. *See* Local Civil Rule 56.1 of the Local Civil Rules for the Southern and Eastern Districts of New York. The facts stated in the defendant's 56.1 Statement of Material Facts are deemed the facts in this case due to the plaintiffs' failure to submit a proper 56.1 statement.

2. By Memorandum and Order dated June 24, 1999, District Judge Seybert granted the defendant's motion to strike the *pro se* memorandum of law of Lawrence R. Rosano submitted in connection with this summary judgment motion and the motion to dismiss the claim of Lawrence R. Rosano.

clude the Merrill Lynch account as part of the gross estate. (Def. 56.1 Stat. at ¶ 10).

On its Internal Revenue Service Form 706, "United States Estate (and Generation–Skipping Transfer) Tax Return," the decedent's estate reported that it owed an estate tax liability of $238,041.41. (Def. 56.1 Stat. at ¶ 11) Upon audit, the Internal Revenue Service made total adjustments of $510,960.58 to the taxable estate. (Def. 56.1 Stat. at ¶ 12) The plaintiffs do not dispute $67,191.58 of the audit adjustments, and do not seek a refund of the additional tax amount attributable thereto. (Def. 56.1 Stat. at ¶ 13).

Upon audit, the Internal Revenue Service treated all of the Gallucci checks as gifts made in 1990, and therefore calculated that the decedent gave Ronda and Raymond J. Gallucci each $19,940. (Def. 56.1 Stat. at ¶ 14). Plaintiffs dispute this adjustment and seek a refund of the resulting additional tax.(*Id.*).

The remaining $423,889 of the adjustments relate to the Merrill Lynch account. The Internal Revenue Service included the value of the Merrill Lynch account on the day after the decedent's death as part of the gross estate. (Def. 56.1 Stat. at ¶ 15) Plaintiffs dispute this adjustment and seek a refund of the resulting additional tax. (*Id.*).

Due to the audit adjustments, $200,948.57 in additional taxes were assessed against the decedent's estate. (Def. 56.1 Stat. at ¶ 16) The Internal Revenue Service assessed penalties against the decedent's estate in the amount of: (a) $33,842, pursuant to 26 U.S.C. § 6662 and (b) $1,507 for failure to pay taxes. (Def. 56.1 Stat. at ¶ 17) Plaintiffs dispute these assessments and seek a refund of the assessed penalties. (*Id.*) The Internal Revenue Service assessed interest totaling $63,702.30 on the tax liability described above. (Def. 56.1 Stat. at ¶ 18) Decedent's estate paid the assessments in full, filed a timely administrative claim for a refund, and filed this action on September 17, 1997.

## DISCUSSION

### I. SUMMARY JUDGMENT STANDARD

A motion for summary judgment will be granted when no material issue of fact remains to be decided and the undisputed facts warrant judgment for the moving party as a matter of law. Fed.R.Civ.P. 56(c); *Raskin v. Wyatt Co.,* 125 F.3d 55, 60 (2d Cir.1997); *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1299 (2d Cir.1995)(citing *Celotex v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); *Chambers v. TRM Copy Centers Corp.,* 43 F.3d 29, 36 (2d Cir.1994). If a reasonable jury could return a verdict for the non-movant, then a material issue of fact remains and the motion must be denied. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Chambers,* 43 F.3d at 36.

The burden of proving that no material issue of fact remains in dispute rests with the movant. *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2551. However, once a motion for summary judgment has been made, the non-moving party must set forth specific factual allegations to avoid summary judgment in the movant's favor. *Kurisoo v. Providence and Worcester R.R. Co.,* 68 F.3d 591, 594 (2d Cir.1995); *Fahle v. Braslow,* 913 F.Supp. 145, 149 (E.D.N.Y.1996), *aff'd,* 111 F.3d 123, 1997 WL 177185 (2d Cir.1997) (citations omitted). Conclusory, *ispe dixit* assertions will not defeat a summary judgment motion. *Western World Ins. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir.1990).

The parties may not rely on the pleadings, but must support their respective positions with affidavits, exhibits, discovery responses or deposition testimony. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *Rule v. Brine, Inc.,* 85 F.3d 1002 (2d Cir. 1996); *United States v. Rem,* 38 F.3d 634, 635 (2d Cir.1994). Any ambiguities and all inferences must be drawn in the non-mov-

ant's favor. *Institute for Shipboard Educ. v. Cigna Worldwide Ins., Co.*, 22 F.3d 414, 418 (2d Cir.1994); *Twin Labs., Inc., v. Weider Health & Fitness*, 900 F.2d 566, 568 (2d Cir.1990). Finally, this Court is charged with "issue finding" and not issue resolution, and is barred from trying issues of fact at this stage. *Kerzer v. Kingly Manufacturing*, 156 F.3d 396, 400 (2d Cir.1998); *Gallo v. Prudential Residential Servs. Ltd. Partnership*, 22 F.3d 1219, 1223–24 (2d Cir.1994). With these principles at hand, we now turn to the instant motion.

## II. RELEVANT PROVISIONS OF THE UNITED STATES TAX CODE

■ In order to properly analyze the issue presented, a brief review of the relevant United States Tax Code provisions is necessary. Section 2001(a) imposes a tax "on the transfer of the taxable estate of every decedent who is a citizen or resident of the United States." 26 U.S.C. § 2001 (1989 and Supp.1999). The taxable estate is defined in Section 2051 as the gross estate less deductions. 26 U.S.C. § 2051 (1999). Pursuant to sections 2031 and 2033, the value of the gross estate generally includes the value of all property to the extent of the interest therein of the decedent at the time of her death. 26 U.S.C. § 2031(1999); 26 U.S.C. § 2033 (1989); *Estate of Gagliardi v. Commissioner*, 89 T.C. 1207, 1210, 1987 WL 257913(1987). Section 20.2031–5 of the Estate Tax Regulations provides, "[t]he amount of cash belonging to the decedent at the date of his death, whether in his possession or in the possession of another, or deposited with a bank, is included in the decedent's gross estate." 26 C.F.R. § 20.2031–5 (1998).

■ Although Section 2051 imposes a tax on the transfer of property by gift, Section 2503(b) provides that the first $10,000 of gifts made to any person during a year are excluded in computing the total amount of gifts made during that year. 26 U.S.C § 2503 (1989 and Supp.1999). Therefore, a gift of $10,000 or less, com-

pleted prior to the donor's death, is neither included in her gross estate nor taxed as a gift.

## III. GOVERNING LAW

The parties dispute which law, state or federal, controls the determination whether decedent's checks at issue were completed gifts at the time of her death. The plaintiffs, relying upon *Major Realty Corp. and Subsidiaries v. Commissioner*, 749 F.2d 1483 (11th Cir.1985), assert that state law does not govern, but rather federal law applies. According to the federal gift tax regulations, a gift is complete when "the donor has so parted with the dominion and control so as to leave him no power to change its disposition, whether for his own benefit or for the benefit of another." 26 C.F.R. § 25.2511–2(b)(1998). The regulations further provide that "[a] gift is incomplete in every instance in which a donor reserves the power to revest the beneficial titles to property in himself." 26 C.F.R. § 25.2511–2(c)(1998).

Defendant contends that the narrow issue of when a donor has "relinquished dominion and control over a gift in the form of a check" is a matter of state law. (Def. Reply Mem. at 3, citing *Metzger v. C.I.R.*, 38 F.3d 118, 122 (4th Cir.1994)). The parties agree, however, that if state law controls, the law of New York State should be applied.

■ This Court finds that state law governs. It is well-settled that rights in property are created by state law. As explained by the United States Supreme Court, "state law creates legal interests and rights in property, [and] federal law determines whether and to what extent those interests will be taxed." *United States v. Irvine*, 511 U.S. 224, 238, 114 S.Ct. 1473, 1481, 128 L.Ed.2d 168 (1994). The plaintiffs' reliance on *Major* is misplaced. In that case, the issue presented to the Eleventh Circuit was "when a sale is complete for purposes of federal income tax." *Major*, 749 F.2d at 1486. Explain-

ing that "the time of passage of title and the legal rights thereby created are determined by state law," the court turned to Florida law and determined that "title to real property is transferred upon delivery by the grantor of a valid deed to the grantee." *Id.*

Likewise, in *Metzger v. Commissioner of Internal Revenue Service,* a case with similar issues as the case at bar, the court applied state law to determine when gifts in the form of checks are completed. *Metzger v. Commissioner of Internal Revenue Service,* 38 F.3d 118, 121 (4th Cir. 1994) (citation omitted). Further, in *McCarthy v. United States,* 806 F.2d 129 (7th Cir.1986), the Seventh Circuit, reversing the district court, explained the "definition of 'property' is a problem of state law, because that is the source of rules identifying and limiting personal interests in assets." *Id.* at 130 (citation omitted). Accordingly, the court of appeals found that the district court erred in disregarding relevant Illinois law when determining whether "the decedent had relinquished dominion and control of the checks sufficient to establish a completed gift." *Id.* The *McCarthy* case, like the case at bar, turned on when the checks were completed gifts. Accordingly, this Court applies the law of New York State.

## IV. STANDARDS UNDER NEW YORK LAW

■ There are four elements which must be demonstrated in order to prove a valid gift in New York State. These elements are: 1) mental capacity of the donor; 2) intention to make a gift; 3) completed delivery, and 4) acceptance by the donee. *In re Avery's Estate,* 76 N.Y.S.2d 790, 795 (1948). The essential requirements, however, are donative intent and executed delivery. *Id.* Here, the defendant concedes, for the purposes of this motion, that the checks at issue were given with the requisite intent. *See* Defendant's Supporting Mem. at 2, and Defendant's Reply Mem. at 5, fn. 7. Accordingly, this

Court will examine whether delivery was executed.

■ ▪Under New York law, "[i]t seems well established that checks are orders on the bank to pay certain sums; that they do not constitute a transfer and delivery of that fund until presented at the bank and paid, because that fund still remains subject to the control and order of the [donor]; and therefore such checks do not constitute gifts...." *In re Gibbons' Estate,* 139 Misc. 658, 660, 249 N.Y.S. 753, 755 (1931). *See also, Estate of Newman,* 111 T.C. No. 3, 1998 WL 420689 (U.S.Tax Ct. July 28, 1998)("[p]etitioner does not direct us to, nor have we found, any state that recognizes delivery of a check to be a completed gift of the underlying funds"); *In re Uris' Estate,* 188 Misc. 772, 773, 71 N.Y.S.2d 620, 622 (1946)("[a] gift by check is without effect until the check is cashed").

■ Further, "[t]he rule is well settled in this state that a gift by check is complete only when the check has been paid during the lifetime of the maker." *In re Grauds' Estate,* 43 N.Y.S.2d 803, 817 (1943). In the matter of *Grauds' Estate,* the surrogate's court explained,

[w]here a check is not paid until after the maker's death, the gift is incomplete and no valid transfer of the fund is effectuated.... It appears to be the rule, moreover, that a gift is incomplete where the check is not paid during the maker's lifetime even though the refusal of the depositary to honor the check is unjustified and erroneous.... The theory underlying these rules is that the issuance of a check does not operate to transfer the sum to the payee until it has been accepted by the bank. By the death of the maker, the authority of the holder to draw the money is revoked and payment by the bank thereafter confers no right to possession upon the payee.

*Id.* at 817.

■ Because a donor can order a bank to stop payment on a check any time

while the check is still outstanding, a completed gift will not be deemed to have occurred until the check is paid by the bank. Therefore, a gift check that is written and delivered to the donee prior to the donor's death but not paid by the bank until after the donor's death, will not be considered a completed gift upon the donor's death.

## V. THE RELATION–BACK DOCTRINE

■ Under the relation-back doctrine, taxpayers may obtain favorable gift or estate tax treatment because the payment of the checks would be deemed to have occurred on the date the checks were presented for deposit at the recipient's bank. Originally, only charitable donations were permitted to reap the benefit of this legal fiction. *See, e.g., Estate of Belcher v. Commissioner,* 83 T.C. 227, 232, 1984 WL 15603 (1984); *Estate of Spiegel v. Commissioner,* 12 T.C. 524, 1949 WL 182 (1949); *Estate of Gagliardi v. Commissioner,* 89 T.C. 1207, 1210, 1987 WL 257913 (1987),(declining to extend the relation-back doctrine to non-charitable gifts); *McCarthy v. United States,* 806 F.2d 129 (7th Cir.1986)(declining to extend the relation-back doctrine because too much time had elapsed between the time the checks were issued and when they were presented for payment); *Dillingham v. Commissioner,* 88 T.C. 1569, 1987 WL 31366 (1987).

Recently, courts expanded the relation-back doctrine. The initial application of the relation-back doctrine by the tax court to a non-charitable gift involved a factual scenario very similar to the case at bar. In the *Estate of Metzger v. Commissioner,* 38 F.3d 118 (4th Cir.1994), non-charitable gift checks written and deposited at the end of 1985 were not paid by the bank until early 1986. There, the donor also wrote another set of checks to the same donees, all of which were delivered and paid in 1986. Upon the donor's death on May 29, 1987, his son reported that the

decedent had not made any taxable gifts within his lifetime.

In deciding whether to apply the relation-back doctrine to the checks written in 1985, the court examined *Dillingham v. Commissioner,* 88 T.C. 1569, 1987 WL 31366 (1987). Similar to *Dillingham,* because the donor had not died prior to the payment of the checks, none of the estate tax avoidance concerns were present. However, unlike *Dillingham,* in *Metzger,* the gift checks were presented for payment just seventeen days after they were issued. Relying on the Eleventh Circuit's explanation that it "express[ed] no opinion as to circumstances where the late December gifts are cashed immediately after the New Year holidays, when financial institutions are closed," because these circumstances were present in *Metzger,* the Fourth Circuit extended the application of the relation-back doctrine. The court explained,

> [i]n such limited circumstance, where noncharitable gifts are deposited at the end of December and presented for payment shortly after their delivery but are not honored by the drawee bank until after the New Year holiday, we agree with the Tax Court that the gifts should relate back to the date of deposit.

*Metzger,* 38 F.3d at 123. Accordingly, the *Metzger* court held that when the taxpayer establishes: "(1) [t]he donor's intent to make a gift, (2) unconditional delivery of the check, and (3) presentment of the check within the year in which for which favorable tax treatment is sought and within a reasonable time of issuance," the relation-back doctrine should apply. *Id.*

The Commissioner of the Internal Revenue Service announced that it would follow the Fourth Circuit's decision in *Metzger* in limited circumstances. Accordingly, the Internal Revenue Service modified Revenue Rule 67–396. The revised rule now provides

> that the delivery of a check to a noncharitable donee will be deemed to be a completed gift for federal gift and estate

tax purposes on the earlier of (i) the date the donor has so parted with dominion and control under local law as to leave in the donor no power to change its disposition, or (ii) the date on which the donee deposits the check (or cashes the check against available funds of the donee) or presents the check for payment, if it is established that: (1) the check was paid by the drawee bank when first presented to the drawee bank for payment; (2) the donor was alive when the check was paid by the drawee bank; (3) the donor intended to make a gift; (4) delivery of the check by the donor was unconditional; and (5) the check was deposited, cashed, or presented in the calendar year for which completed gift treatment is sought and within a reasonable time of issuance.

Rev. Rul. 96–56, 1996–2 C.B. 161, 1996–50 I.R.B. 7, 1996 WL 698319 (I.R.S. Dec.9, 1996).

Shortly thereafter, the United States Tax Court, in the *Estate of Newman v. Commissioner*, 111 T.C. No. 3 (1998), 1998 WL 420689 (U.S.Tax Ct. July 28, 1998), declined to extend the relation-back doctrine to non-charitable gifts where the donor had died prior to the payment of the checks. The *Newman* court did not follow *Metzger's* three part test; instead, it relied upon the language in *Metzger* which states that the test should not be used in cases where the donor dies prior to the payment of the checks. With these standards in mind, this Court turns to the checks at issue.

## VI. THE CHECKS AT ISSUE

### A) THE EAB ACCOUNT CHECKS

The four checks drawn on the EAB account can be divided into two categories: 1) two checks totaling $19,900 which were written on December 29, 1989 and cleared on January 3, 1990; and 2) two checks totaling $19,980 which were written on January 5, 1990 and cleared on January 30, 1990.

### i) The EAB Checks Dated December 29, 1989

The issue presented with respect to the first two checks totaling $19,900 from the EAB account, both dated December 29, 1989 and which cleared on January 3, 1990, is whether these gifts were completed in 1989 or 1990. It is clear, however, that these checks were gifts completed within the donor's lifetime because they cleared on January 3,1990, prior to Mary Rosano's January 21, 1990 death.

If these gifts were completed in 1989, they qualify for the annual exclusion under § 2503(b); however, if the gifts were not completed until 1990, they must be combined with the other gifts made to Ronda and Raymond Gallucci in that year. Therefore, Mary Rosano would have exceeded the annual exclusion for the 1990 year and her estate would be subject to taxation on the amount of the checks in excess of the $10,000 exclusion per individual donee. The defendant treated all of the EAB checks as gifts in 1990, but the plaintiffs argue that these first two checks were gifts in 1989. Therefore, the issue is whether the gift of these checks was complete upon deposit or on the date that they were actually paid.

Under *Metzger* and Revenue Rule 96–56, the relation-back doctrine applies to these facts. Because the decedent was alive at the time the bank paid these checks, the date on which the checks were presented for deposit is the date which controls. Plaintiffs claim that these checks were deposited at 5:21 p.m. on December 29, 1989. (Pls. Memo. in Opposition at 1). *See Metzger*, 38 F.3d 118 (4th Cir.1994); Rev. Rul. 96–56, 1996–2 C.B. 161, 1996–50 I.R.B. 7, 1996 WL 698319 (I.R.S. Dec.9, 1996).

However, the defendant does not agree that these checks were deposited on December 29, 1989. Because there is a genuine issue of material fact with regard to the date of deposit, it is respectfully reported and recommended that this portion

of the defendant's motion for summary judgment be denied.

### ii) The EAB Checks Dated January 5, 1990

 It is clear that these checks did not clear within the donor's lifetime because the drawee paid these checks on January 30,1990 and Mary Rosano died on January 21, 1990. Accordingly, these checks were not gifts completed within the decedent's lifetime because they cleared after her death. Accordingly, the relation-back doctrine cannot be applied under these facts, and the amount of these checks should be included in the decedent's estate for estate tax purposes. *See Newman v. Commissioner,* 111 T.C. No. 3, 1998 WL 420689 (U.S.Tax Ct. July 28, 1998); Revised Rule 96–56.

### VII. EQUAL PROTECTION UNDER THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION

Despite the *Newman* case and Revenue Rule 96–56, plaintiffs assert that the difference in treatment of non-charitable gifts as opposed to charitable donations violates the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution. Plaintiffs argue that Internal Revenue Code Section 2512[3], as applied, is unconstitutional. Section 2512 provides, in relevant part, "[i]f the gift is made in property, the value thereof at the date of the gift shall be the amount of the gift." 26 U.S.C. § 2512(a)(1989).

 While the statute, on its face, does not distinguish the types of gifts to which it applies, plaintiffs are correct that the statute has been applied differently, depending upon whether the gifts at issue are charitable or non-charitable. However, plaintiffs argument is fatally flawed in that donors of charitable and non-charitable gifts are not similarly situated, as required for an equal protection violation. *Cleburne v. Cleburne Living Center, Inc.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 3253–3254, 87 L.Ed.2d 313 (1985))(explaining that Equal Protection requires that "all persons similarly situated . . . be treated alike").

In the *Estate of Speigel v. Commissioner,* 12 T.C. 524, 1949 WL 182 (1949), a case relied upon by plaintiffs, the Tax Court explained, "[c]haritable contributions may be gifts in the broad sense, but for tax purposes, they fall into a special class and there is special legislation dealing with them." *Id.* at 531, 1949 WL 182. There, the court examined the Revenue Act of 1938, Section 23(*o*) and determined that charitable gifts are distinguishable from other types of gifts because "there may be enforceable obligations growing out of a contribution to charity" which do not apply to non-charitable gifts. *Id.*

Likewise, in the *Estate of Belcher v. Commissioner,* 83 T.C. 227, 1984 WL 15603 (1984), also cited by plaintiffs, the Tax Court reasoned, "policy considerations may well justify inclusion in the gross estate of outstanding checks issued to noncharitable donees. No such policy considerations, however, would justify the inclusion of outstanding checks issued in good faith by the decedent to charitable donees prior to his death but cashed after his death." *Id.* at 232, 1984 WL 15603. There, because of the special characteristics of charitable contributions, the court applied the relation-back doctrine to charitable gifts, but reserved decision as to

---

**3.** Plaintiffs argue that "I.R.C. § 2512 as promulgated by Treas. Reg § 25.2512 asserts that a donor must give up complete dominion and control of an asset before a gift will be complete for gift tax purposes." (Pls. Opposition Brief at 15). However, Treasury Regulation Section 25.2512 does not include such language; rather, Treasury Regulation Section 25.2511–2(b) requires that the donor part

with dominion and control as to leave in him no power to change its disposition ..." in order for a gift to be complete. 26 C.F.R. § 25.2511–2(b)(1998). Accordingly, this Court concludes that plaintiffs have mis-identified the challenged section and will substitute Section 25.2511–2(b) in the analysis below.

whether the doctrine should extend to non-charitable gifts. *Id.* at 238, 1984 WL 15603.

Declining to extend the relation back doctrine to non-charitable gifts, the Tax Court, in the *Estate of Gagliardi v. Commissioner*, opined "in the non-charitable gift situation— gifts are not deductible for income tax purposes and, if made after death, do not reduce the gross estate for estate tax purposes. Thus, the reasoning in *Belcher* does not warrant the extension of the relation-back doctrine to non-charitable gifts." *Id.* at 1212, 1987 WL 257913.

Further, in *McCarthy v. United States*, 806 F.2d 129 (7th Cir.1986) the Seventh Circuit, reversing the district court, held that the relation-back doctrine does not apply to non-charitable gifts. Distinguishing the policy considerations which justify excluding charitable gifts from the decedent's gross estate, the court explained,

> the common element present both in regulation 20.2031–5 (exclusion of bona fide legal obligations) and *Belcher* which warranted application of the relation-back doctrine was not merely the lack of a sufficiently compelling justification for inclusion; but, was rather the existence of an offsetting deduction creating the possibility of a wash. No such practical consideration extends to noncharitable gifts.

*Id.* at 132. Rejecting the appellee's argument, the *McCarthy* court continued,

> there remains sufficient justification compelling the inclusion of outstanding checks issued to noncharitable donees. The Internal Revenue Code now exempts only those gifts made by a decedent up to $10,000 per donee, per year. I.R.C. § 2035(b)(2) (1985). To the extent of that exemption, application of the relation back doctrine fosters estate tax avoidance. By issuing a check to a noncharitable donee with the understanding that it not be cashed until after his death, a decedent may effectively bequest up to $10,000 per donee, thus avoiding the estate tax consequences normally attending such transactions.

Clearly, section 2035(b)(2) was never intended to operate in such a manner. Only after a donee has parted with complete dominion and control of funds does section 2035(b)(2) exempt them from the general rule that all gifts made within three years of death are to be included in the donor's gross estate. I.R.C. § 2035(a)(1985).

*Id.*

Additionally, in this Court's view, there are other significant reasons for different treatment of charitable and non-charitable gifts. Often, as death draws near, donors tend to increase charitable donations combined with heightened faith. Whether hoping to prolong life or insure a peaceful eternity, it is not uncommon for people to gift charities at this time. Should death occur after the charitable gift is made, but prior to the time such gift is complete, if the charitable gift were deemed incomplete and instead included in the decedent's gross estate, the donor's intent would be frustrated.

In addition, donee charities generally are unaware of a donor's illness or impending death. Nor do charitable organizations visit or call to determine why a donor has made a gift. In contrast, however, friends and family members of a donee, whose relationships are so close that the donor would gift just under $10,000 to them, are usually well aware of the donor's failing health and eventual demise. In light of this awareness, it is incomprehensible to this Court why a friend or relative donee would wait until after the donor's death before cashing or presenting the checks for deposit.

Accordingly, for the reasons set forth above, because charitable and non-charitable gifts are not similarly situated, the plaintiffs' constitutional challenge must fail.

### B) The Merrill Lynch Account Checks

Turning to the forty-three checks drawn on the Merrill Lynch account, it is undisputed that all· of these checks are dated

before the donor's death, but cleared after her death. Therefore, for the reasons set forth above, none of these checks were completed gifts within the donor's lifetime and accordingly, all, with the exception of the checks to Lawrence Washburn and Robert Livingston as set forth below, are included in the estate for tax purposes. *See Newman v. Commissioner,* 111 T.C. No. 3, 1998 WL 420689 (U.S.Tax Ct. July 28, 1998); *Metzger v. Commissioner,* 38 F.3d 118 (4th Cir.1994); Rev. Rul. 96–56, 1996–2 C.B. 161, 1996–50 I.R.B. 7, 1996 WL 698319 (I.R.S. Dec.9, 1996).

Plaintiffs contend that two of these checks were not gifts at all, but rather were payment of legal obligations. This Court finds that there is a genuine issue of material fact with respect to whether or not these two checks were gifts. Plaintiffs assert that the check payable to Lawrence Washburn in the amount of $20,000 was payment for legal services rendered (*see* Pls. 56.1 Statement at ¶ 4 and Def. Ex. 11) and the check payable to Robert Livingston in the amount of $2,954.87 was payment of real estate taxes.(*See* Pls. 56.1 Statement at ¶ 4; Def. Exs. 9 and 10). Plaintiffs claim that these two checks were not gifts at all. Defendant asserts that such argument is procedurally barred due to the plaintiffs' failure to raise this issue in the refund claim below.

While neither party has provided the Court with the record of the claim for a refund, this Court finds that such issue is deemed raised. The defendant's own exhibits reveal that these checks were at issue during that proceeding in that such checks are included on the Merrill Lynch account statement. (Def. Exs. 9, 10 and 11). Further, because the Washburn check exceeds the $10,000 gift tax exclusion, only a portion of that check would have been eligible for exclusion from the gross estate, provided it was in fact a completed gift.

Accordingly, because there is a genuine issue of material fact as to whether these two checks were gifts, the defendants motion for summary judgment with respect to these checks must be denied. This Court, however, reports and recommends that summary judgment be granted with respect to the balance of the Merrill Lynch checks for the reasons set forth above.

## VIII) PENALTIES ASSESSED AGAINST THE ESTATE PURSUANT TO SECTION 6662 OF THE INTERNAL REVENUE CODE

Defendant claims that it is entitled to summary judgment with respect to the penalty assessed against the decedent's estate pursuant to Section 6662 of the Internal Revenue Code. The defendant assessed a $33,842 penalty against plaintiffs for failing to include, in the gross estate, the balance of the Merrill Lynch account at the time of the decedent's death. The plaintiffs assert that the penalty is improper because there was reasonable cause for the omission. Plaintiffs contend that when a taxpayer relies in good faith on an attorney's advice and that advice turns out to be erroneous, such reliance on the attorney's advice constitutes reasonable cause for the waiver of the penalty. However, defendant argues that plaintiffs have produced no evidence, not even a sworn statement, that their understatement of the amount of the estate was due to reliance on the advice of counsel.

This Court agrees with defendant. Plaintiffs' obligation is to come forward and support their position with an affidavit, deposition transcript or sworn discovery responses or exhibits. Here, plaintiffs have not provided a scintilla of evidence to support their claim that the omission was made in reliance on the advice of counsel. Having failed to come forward with such material, plaintiffs have failed to raise an issue of fact with regard to the defendant's imposition of a penalty assessed against the estate pursuant to Section 6662 of the Internal Revenue Code. Accordingly, defendant is entitled to summary judgment on such claim.

## CONCLUSION

Based on the foregoing, because the Court has identified a genuine issue of

material fact with respect to the EAB checks dated December 29, 1989, and the Washburn and Livingston checks from the Merrill Lynch account, it is respectfully reported and recommended that the defendant's motion for summary judgment on these issues be DENIED. For the reasons set forth herein, it is further reported and recommended that the remainder of the defendant's motion for summary judgment be GRANTED.

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of the Court with a copy to the undersigned within ten (10) days of the date of this Report. Failure to file objections within this period waives the right to appeal the District Court's Order. *See* 28 U.S.C. 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. June 30, 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir.1996); *IUE AFL–CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir.1993); *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir.1993); *Frank v. Johnson*, 968 F.2d 298, 299 (2d Cir.1992).

July 29, 1999.